Jᴏʜɴ J. Mɪʟʟᴇʀ, as President, and Eʟɪsᴀʜ E. Wɪʟʟɪᴀᴍs, as Secre-
tary-Treasurer, Respectively, of Blasters and Drill Runners'
Local Union No. 29, an Unincorporated Association Consisting
of More Than Seven Members, Plaintiffs, v. Jᴀᴍᴇs Gᴀʟʟᴀɢʜᴇʀ,
Individually and as President, Pᴀᴛʀɪᴄᴋ McGᴇᴇ, Individually
and as Secretary-Treasurer, Respectively, of Compressed Air,
Foundation, Caisson, Tunnel, Subways, Sewers, Cofferdam
Construction, Local Union 147, an Unincorporated Association
Consisting of More Than Seven Members, and Others,
Defendants.

Supreme Court, Special Term, New York County. June 4, 1941.

*O'Connell & Butler* [*Edmond B. Butler* and *Edward T. Galloway* of counsel], for the plaintiffs.

*Boudin, Cohn & Glickstein* [*Hyman N. Glickstein* and *Irving R. Feinberg* of counsel], for the defendants.

HOFSTADTER, J. The plaintiff (Blasters and Drill Runners' Local Union No. 29) and the defendant (Compressed Air, Foundation, Caisson, Tunnel, Subways, Sewers, Cofferdam Construction, Local Union 147) are affiliated with the same International (International Hod Carriers Building and Common Laborers' Union of America). A dispute has arisen between them with reference to the rights of one or the other to supply the labor for the work being conducted at the Manhattan construction shaft of the Battery-Brooklyn Tunnel. Prior to the commencement of the work the contractor was solicited on behalf of Local 147 but for avowed reasons not pertinent to a decision herein the offer was rejected and an agreement was entered into with the plaintiff for the exclusive employment of members of Local 29.

In the course of the dispute the defendant union has thrown a picket line around the job in which the plaintiff's members are employed. It is charged that the members of the defendant union have engaged in acts of violence both at the scene of the work and at or near the homes of members of the plaintiff union; and the court is asked to issue a sweeping injunction restraining all picketing, both violent and peaceful.

Plaintiffs claim that the controversy here involved is not a labor dispute within the meaning of section 876-a of the Civil Practice Act. The point is made that inasmuch as the members of the defendant union are not employed at the picketed enterprise and since jurisdiction over the work is properly in the plaintiff union (this claim is challenged — in good faith, I am persuaded — by the defendant), the matters in issue do not involve a labor dispute. Though subdivision 10 of section 876-a does not, in words, make explicit answer to the problem thus arising, in the light of the decisions of the Appellate Division in *American Guild of Musical Artists, Inc.*, v. *Petrillo* (261 App. Div. 272) and *Stalban* v. *Friedman* (259 id. 520), it can no longer be open to doubt that the issues here must be deemed to arise out of a labor dispute. (See, also, *Florsheim Shoe Store Co.* v. *Retail Shoe Salesmen's Union,* 262 App. Div. 769.) But this determination is not decisive of the controversy, as urged by the defendant, as it is clear from the proof offered at the trial that the procedural requirements of section 876-a with respect to settlement and mediation — so far as practical

and feasible — were fully complied with. (See *May's Furs & Ready-to-Wear, Inc.*, v. *Bauer*, 282 N. Y. 331, 345.)

On the record before me, I must find that violence has been practiced by members of the defendant union both at the scene of the dispute and in other parts of the city — at or near the homes of members of the plaintiff union. The problem is whether the v'olence was of such nature that an injunction must issue to restrain it in the future, and, even more, whether the violence was of such a character that in order to prevent it, the enjoining of even peaceful picketing is indicated.

The plaintiff invokes the authority of *Busch Jewelry Co.* v. *United Retail Employees' Union Local* 830 (281 N. Y. 150) and of *Milk Wagon Drivers' Union* v. *Meadowmoor Dairies* (312 U. S. 287) in support of its prayer for such a blanket injunction prohibiting all picketing. But neither decision is applicable here.

In our jurisdiction, to justify such sweeping relief, the picketing must be so permeated with lawlessness as to offer no hope of any peaceful activities in the future — so varied and persistent as to justify beyond possibility of doubt, apprehension of the continuance and diffusion of violence to the exclusion of lawful conduct in the future. The court itself, in *May's Furs & Ready to-Wear, Inc.*, v. *Bauer* (*supra*, 344), rendered manifest the intent and scope of its ruling in the *Busch* case: " In the *Busch* case a majority of this court read the record as disclosing a situation completely permeated by violence and as affording no ray of hope that the defendant would engage in other than violent picketing. The rule of that case presents an exception which is verbal rather than real, for since defendant would have engaged only in violent picketing, the unqualified prohibition of picketing operated only on the one kind of picketing present in that situation, viz., violent picketing. In that case peaceful picketing was out of the question."

The proof here falls far short of demonstrating that peaceful picketing will be impossible in the future. On the contrary, the record is clear that the acts of violence complained of, certainly those committed at the scene of the dispute, were dealt with by the police and proper disposition made of them. Under these circumstances, the decision in the *Mays* case rather than the *Busch* case is controlling, and it is clear that under the authority of that case, as applied to the facts of this, no injunction to restrain *peaceful* picketing would be justified or proper. (*Baillis* v. *Fuchs*, 283 N. Y. 133, 138.)

It is clear that in the *Meadowmoor* case the court was dealing, not with the *wisdom* of issuing injunctions of the sweeping character sought for here, but merely with the *power* of the State court

(there being no anti-injunction statute) to do so under the Constitution of the United States, in a situation described by the court: " The picketing in this case was set in a background of violence. In such a setting it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful."

The suggestion that the decision in that case was intended to extend the rule laid down by the Court of Appeals in the *Mays* case is entirely without merit. No such intention is manifest in the opinion. And indeed, notwithstanding careful study of the language of the majority opinion in the *Meadowmoor* case and with full realization of its implications, one encounters some perplexity in reconciling it altogether with *Thornhil* v. *Alabama* (310 U. S. 88). It seems difficult to read out of the Fourteenth Amendment the right to peaceful picketing because of incidents of violence, as was done in the *Meadowmoor* case, and at the same time read into the Fourteenth Amendment the right to picket generally, as was done in the *Thornhill* case, but on these issues the Supreme Court has spoken.

But it is urged that an injunction should issue to restrain further acts of violence.

We are enjoined by subdivision 1 of section 876-a of the Civil Practice Act that before an injunction can issue, we must find: " (e) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection." To make such a finding, the record would have to show acts of repeated violence which have gone unpunished or undealt with because of the lethargy or inability of the police to deal therewith. From the evidence here, no such inference can be drawn. On the contrary, in every reported case of violence, competent police action was immediately forthcoming; at least where the acts took place at the scene of the dispute. Nor were the acts of violence at the scene of the dispute so numerous as to create the kind of hopeless confusion which would render it difficult for the police to act. The criminal law is a standing injunction against violence and the criminal courts, as an original matter, are the proper forum in which defendants, who have breached the peace, must be charged and heard.

To substitute a court of equity in the performance of the duties of a criminal court is a grave responsibility and one to be shunned by a court of equity, in the light of the declared statutory policy of the State. The view is not without supporting authority that even without this declared policy, wise judicial administration of justice would have advanced the cause of better employer-employee

relations by displaying greater diffidence in entering the arena of the industrial dispute armed with the injunctive process.

While it was said by Mr. Justice FRANKFURTER in the *Meadowmoor* case that the courts " find nothing in the Fourteenth Amendment that prevents a State if it so chooses from placing confidence in a chancellor's decree and compels it to rely exclusively on a policeman's club," the courts of this State are constrained by the clear mandate of the statute to refer sporadic acts of violence to the protection of the police authorities to the fullest extent possible, and to utilize the chancellor's decree only if it can be shown that such protection has proved inadequate. Only when, and when only, acts of violence are so manifold and recurrent that they constitute a continuing and persistent threat to the future peace and order, with imminent injury to person or property, is the interposition of the arm of equity justified; for injunctive relief is not available as a punishment for past offense. (*J. H. & S. Theatres, Inc.*, v. *Fay*, 260 N. Y. 315, 320; *Nann* v. *Raimist*, 255 id. 307, 315; *Iron Molders' Union* v. *Allis-Chalmers Co.*, 166 Fed. 45, 49.)

Bearing in mind, particularly, that beginning early in February — except for several isolated instances since that time — the acts of disorder ceased, it seems clear that under the statute, on the record in this case, no adequate basis was laid for the granting of any injunctive relief to restrain picketing at the scene of the dispute.

Is a different conclusion required with respect to acts of violence committed in or about the homes of plaintiff's members? What the Court of Appeals said in the *Mays* case with reference to enjoining violence in connection with picketing there, seems to be applicable as well to this situation. Here the violence committed away from the scene of the dispute has gone unpunished; the offenders were not apprehended. It is obviously difficult, if not impossible, to supply adequate police protection to all of the individual members of the plaintiff union at their respective homes; the apprehension of persons intent on injuring a worker wherever they can find him is, naturally, beset with difficulties. Again, Americans are traditionally accustomed to thinking of their homes as inviolable; even police officers may not enter therein without proper authority; the Constitution throws safeguards around the enjoyment of the tranquillity of our fireside. (Fed. Const. 4th Amendt.; State Const. art 1, § 12.) To permit an invasion of these strictly private rights would seem to me to be a dereliction of the duty of a judge sitting in equity; to countenance incursion into the domestic sanctuaries of our people, by violent means and

by repeated telephonic disturbances, would seem to be a step away from that ordering of our social life to which the courts are committed.

It may be that there can be no bar to peaceful picketing of the homes of employers or employees, any more than there is objection to peaceful picketing at the scene of a dispute. But, though Mr. Justice FRANKFURTER, in discussing the *Thornhill* case, pointed out that it involved a statute " baldy forbidding all picketing near the employer's place of business " and at least permitting the inference that a State might, within the four corners of the " due process " clause, prohibit picketing at places *other* than the employer's place of business, the distinction has not yet been recognized and established by controlling authority. If the right to picket is merely an aspect of the right to free speech and assembly, can it make any difference that the publication of the picket's grievances are expressed to possible customers of the employer rather than to the employee's neighbors and friends? May the right to free speech be thus limited?

However, it is entirely clear that a court of equity is not constrained to refrain from acting when violence has been proven, as in the case at bar, away from the scene of the dispute, and which, in the main, cannot be adequately dealt with by the police authorities. (See *Remington Rand, Inc.,* v. *Crofoot,* 248 App. Div. 356; affd., 279 N. Y. 635.) Here I must find, as a matter of just and compelling inference, that for purposes of harassing and intimidating not only plaintiff members but members of their families, representatives of the defendant have made threatening telephone calls to their homes and have sought to accost plaintiff's members to inflict assaults upon them; and indeed, in one case at least, they succeeded in inflicting most grievous and lasting bodily harm. In such a case, we conceive it to be the duty of this court to utilize its injunctive process to prevent further acts of violence and to deter those who would run the risk of violating the criminal statutes.

We are not unmindful of the difficulties of enforcement that confront such a decree. In the first place, section 876-a of the Civil Practice Act expressly provides that in controversies arising out of labor disputes, the rule of *respondeat superior* does not apply, and the difficulty of apprehending individual malefactors would be almost as great in proceedings to enforce the injunction as it would be in prosecutions under the criminal law. But these obstacles, though they are important and though they bear on the advisability of issuing the injunction at all, cannot control in a case of this kind, where individuals have been molested in the privacy of their homes and in the security of their firesides, and where serious

injuries have been inflicted upon men far away from the scene of the labor dispute; and where it is a practical impossibility that dequate police protection can be secured in the future.

The injunction which we are here ordering will be limited, there-.ore, to restrain all members of the defendant union from committing any acts of violence or from molesting, by telephone or visits, the members of the plaintiff union in their homes ôr at any place away from the scene of the labor dispute.

Both the refusal to grant an injunction as well as the limited injunction here ordered are subject to the characterization employed in the *Meadowmoor* case, that " it is ' permanent' only for the temporary period for which it may last." Familiar equity procedure, as the learned justice there points out, will permit a modification of the decree should eventualities occur which require the issuance of broader orders of restraint or the narrowing of the injunction here directed. For these purposes, this court will reserve jurisdiction over this case and grant permission to either side to apply at the foot of the decree for further directions

The motions, objections and other matters adverted to in the reply briefs of the respective parties have been ruled upon in a separate memorandum filed herewith.

The issues tendered by the record have been fully disposed of herein and, therefore, it will not be necessary for the parties to submit a formal decision embodying findings of fact and conclusions of law.

Settle decree accordingly.