## NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, DISTRICT 1199E, ETC. ET. AL. *v.* LAFAYETTE SQUARE NURSING CENTER, INC., ETC.

[No. 776, September Term, 1976.]

*Decided February 3, 1977.*

620

The cause was argued before GILBERT, C. J., and THOMPSON and MOORE, JJ.

*Bernard W. Rubenstein,* with whom were *Ann F. Hoffman* and *Edelman, Levy & Rubenstein, P.A.* on the brief, for appellants.

*George W. McManus, Jr.,* with whom was *Frank S. Astroth* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Labor disputes resulting in strikes are never pleasant, are ofttimes filled with bitterness and rancor, and are sometimes violent. When the strikers' jobs are filled by management with strikebreakers or "scabs," as they are commonly known, emotions may give way to violence. In that event, the labor dispute becomes more than a management-union controversy because the police and the courts then become involved as keepers of the public peace. This appeal is the direct result of such an occurrence.

To comprehend fully the issues herein discussed, we shall briefly set the factual predicate giving rise to this case:

Lafayette Square Nursing Center, Inc. (Center) purchased on August 9, 1976, a nursing home from Community Health Corporation (Community Health). Immediately prior to the acquisition of the home by Center, the home was known as Bolton Hill Nursing and Convalescent Center (Bolton). Community Health had previously entered into a labor agreement with National Union of Hospital and Health

Employees, District 1199E, an unincorporated trade union (Union). By terms of the agreement, Union was recognized as the collective bargaining agent for certain employees of Bolton.

Almost simultaneously with Center's emption of Bolton from Community Health, it entered into an agreement with Olympic Management Services, Inc., a Delaware corporation, whereby Olympic was to supply the labor for Center. The employees of Community Health who had been working at Bolton were informed that they could make job applications to Olympic and "they would be hired . . . and continue to receive the same wages, benefits and other terms and conditions of employment they enjoyed as employees of Community Health. . . ."

At approximately 1 p.m. on August 10, 1976, representatives of the Union went to the Center and demanded that the Union be recognized by Center as the collective bargaining agent and that Center assume Community Health's collective bargaining agreement. Unsuccessful in that endeavor, the Union advised Center, by telegram from its parent organization, that a strike would be called, and Center would be picketed commencing 6 a.m., August 22, 1976. Notwithstanding the date set in the telegram, pickets arrived on the morning of August 11, 1976, and the strike began.

Two days later a "Bill of Complaint for Temporary and Permanent Injunction" was filed by Center against the Union.[1] The Bill recited that acts of coercion, intimidation, violence and property damage had occurred at the nursing home and prayed that the Union be enjoined "from threatening, intimidating, warning, assaulting, blocking or in any other way molesting or interfering with any person on or about the premises" of Center. Additionally, the Circuit Court of Baltimore City was asked to limit to not more than two (2) the number of pickets "at any of the entrances to the premises" of Center.

---

1. Also named as defendants in the Bill were: Ronald Hollie, President of District 1199E; Isiah T. Spriggs, Executive Vice President, District 1199E; and Cyril E. Kearl, Secretary-Treasurer of District 1199E. All defendants in the trial court have appealed. We shall refer to all collectively as "Union."

Following the hearing of August 17 and 18, 1976, the trial court issued an injunction which restrained the Union from,

"(c) Threatening, intimidating, warning, assaulting, blocking or in any other way molesting or interfering with any person on or about the premises of . . . [the Nursing Center] or seeking entrance or exit to or from the . . . [Center's] premises; and,

(d) Placing or allowing more than four (4) pickets at the main or Lafayette Avenue entrance to . . . [Center's] nursing home.

(e) Placing or allowing more than two (2) pickets at the courtyard entrance to . . . [Center's] nursing home, said entrance being located on John Street.

(f) Placing or allowing more than two (2) pickets at the ambulance entrance . . . .

(g) Placing or allowing more than two (2) pickets at either of the alley entrances . . . ."

The Union promptly appealed to this Court where it alleges that the chancellor erred because:

"A. The Court's finding that unlawful acts have been threatened or committed and will be executed or continued unless restrained is clearly not supported by the evidence.

B. The Court's finding that substantial and irreparable injury to . . . [Center's] property will follow unless relief is granted is unsubstantiated by the evidence.

C. The Court's finding that . . . [Center] has no adequate remedy at law is not supported by the evidence.

D. The record does not support the Trial Court's finding that the police could not control the situation nor that police protection was inadequate.

E. The Maryland Code requires that a complainant seeking an injunction make every reasonable effort to settle a labor dispute either

with the aid of any available machinery, through governmental mediation or voluntary arbitration, unless irreparable injury is threatened."

The scope of review of injunctions by the Court of Appeals is governed by Md. Rule 886. *Md. Trust Co. v. Tulip Realty,* 220 Md. 399, 411, 153 A. 2d 275, 283 (1959). The Court of Special Appeals has its counterpart in Md. Rule 1086. *Sullivan v. Auslaender,* 12 Md. App. 1, 3 n. 3, 276 A. 2d 698, 700 (1971). The standard to be applied, therefore, in this Court's review of Union's contentions "A" through "D", is whether the chancellor's findings of fact were "clearly erroneous."

The General Assembly has declared with regard to the use of injunctions in labor-management disputes that:

"Negotiations of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract, and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Md. Ann. Code art. 100, § 63.

By enactment of Md. Ann. Code art. 100, § 68, the legislature has mandated:

"No court nor any judge or judges thereof shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, (with opportunity for cross-examination) in opposition thereto, if offered, and except after findings of all the following facts by the court or judge or judges thereof;

(a) *Acts committed.* — That unlawful acts have been *threatened or committed* and will be executed or continued unless restrained;·

(b) *Injury — In general.* — That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

(c) *Same—Extent.*—That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon defendants by the granting thereof;

(d) *Jurisdiction.* — That no item of relief granted is relief that a court or judge thereof has no jurisdiction to restrain or enjoin under § 65 of this article;

(e) *No remedy at law.* — That complainant has no adequate remedy at law; and

(f) *Failure to protect property.* — That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection.

(g) *Notice of hearing.* — Such hearing shall be held after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to those public officers charged with the

duty to protect complainant's property." [2] (Emphasis supplied.)

The chancellor found as a fact:

"a.) that the mass picketing, blocking of exits and entrances, acts of violence, loud noise, verbal abuse, verbal assaults and threats set forth ... are illegal and unlawful acts

---

**2.** The statute, Md. Ann. Code art. 100, § 68, continues on to provide:

"(h) *Temporary injunction — In general.* — Provided, however, that if a complainant shall also allege that unless a temporary restraining order shall be issued before such hearing may be had, a substantial and irreparable injury to complainant's property will be unavoidable, such a temporary restraining order may be granted upon the expiration of such reasonable notice of application thereof as the court may direct by order to show cause, but in no case less than forty-eight (48) hours.

(i) *Same — Service of notice to show cause; duration.* — Such order to show cause shall be served upon such party or parties as are sought to be restrained and as shall be specified in said order, and the restraining order shall issue only upon testimony, or in the discretion of the court, upon affidavits, sufficient, if sustained, to justify the court in issuing a temporary injunction upon a hearing as herein provided for. Such a temporary restraining order shall be effective for no longer than five days, and at the expiration of said five days shall become void and not subject to renewal or extension, provided, however, that if the hearing for a temporary injunction shall have been begun before the expiration of the said five days the restraining order may in the court's discretion be continued until a decision is reached upon the issuance of the temporary injunction.

(j) *Same — Bond.* — No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order of injunction, including all reasonable costs (together with a reasonable attorney's fee) and expenses against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

(k) *Same — Decree; pursuit of other remedy.* — The undertaking herein mentioned shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, submitting themselves to the jurisdiction of the court for that purpose. But nothing herein contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity."

Subsections "h" through "k" are not here applicable and indeed are not part of the "fact finding" process required by Section 68.

caused by or engaged in by the representatives, agents, servants, and employees of Respondent Local 1199E and those acting in consort and participation with them and such Acts will continue unless restrained;

b.) that the potential for violence to Complainant's employees and destruction of Complainant's property is great and substantial and irreparable injury to Complainant's property will more probably then [sic] not follow unless the relief requested in the Bill of Complaint is granted;

c.) that as to each item of relief requested, greater injury will be inflicted upon Complainant by the denial thereof than will be inflicted upon Respondents by the granting thereof;

d.) that as a matter of law, those acts complained of by the Complainant and sought by it to be enjoined are not within the prohibitions of S 65 of Article 100 of the Annotated Code of Maryland and that there has been no Federal pre-emption of the right of the State courts to prohibit the acts complained of;

e.) that as a result of the aforesaid unlawful acts by Respondent Local 1199E, Complainant has suffered substantial and irreparable injuries for which it has no adequate remedy at law and unless a permanent injunction is issued, Complainant will suffer substantial and irreparable injury;

f.) that the public officers charged with the duty to protect ... [Center's] property have failed or are unable to provide adequate protection;

g.) that only by the issuance of the injunctive relief hereinafter set forth may the

peace and security of the citizens of this State and their property be protected;

h.) that the end sought to be obtained may best and most fairly be reached by prohibiting those particular acts which lead to the continuing disorders and may place reasonable limitation on the number of pickets that may be maintained by Respondent Local 1199E; that the unlawful acts which have been committed will be continued unless restrained . . . ."

At the hearing before the trial court, there was testimony that (1) the noise created by the picketers of the Center was great and disturbed persons living in the neighborhood; (2) a hose was placed through the window of the kitchen of the Center and the water was turned on; (3) tacks were placed in the driveway of the Center; (4) a picket was struck by a car driven by an employee of Center; (5) Arlene Lewis, an employee of Center, while on her way to work, was pushed against a wall by pickets and told to "get her ass back on the bus"; (6) Mary Nutter, an employee, was blocked from entering the Center, and subsequently had a bottle thrown at her car as well as having Rick Ehrman, District 1199E's Administrator, beat and kick her car; (7) Harriet Pitt was told, on two occasions, by a picket that if she went into the building the picket "was going to whip . . . [her] ass"; (8) Employee Margarite Thomas, as she left the Center, was allegedly assaulted by her brother who was picketing for 1199E; and (9) Sonya Gershowitz, owner of the Center, testified that pickets kicked her car and threw rocks and stones at it, broke windows in the chapel, called her names and tried to stop trash from being picked up and food from being delivered.

The Union refers us to a number of cases decided in various other State courts as well as Federal tribunals.[3] A

3. Re: *Contention A.* Kayser-Roth Corp. v. Textile Workers Union of America, 347 F. Supp. 801 (D. Tenn. 1972), *aff'd* 479 F. 2d 524 (6th Cir.), *cert. denied*, 414 U. S. 976, 94 S. Ct. 292, 38 L.Ed.2d 219 (1973) (Intra-family

reading of those cases, however, fails to reveal that in any of them was a trial court precluded from issuing an injunction to prevent violence to the person or to property.

Although it is clear that Md. Ann. Code art. 100, §§ 63-75 (sometimes called "Maryland's Little Norris-La Guardia Act") was intended to and did abridge substantially the authority of courts of equity to issue injunctions in matters involving labor disputes, the act did not strip those courts totally of injunctive power. Indeed, § 68, quoted above, makes it beyond question that an equity court may issue an injunction in labor disputes provided that the issuing court shall first find from the evidence certain specific facts. If *all* of those facts are found, the injunction may issue. Conversely, if any one or more is not so found, no injunction may be issued.

Applying the provisions of Md. Ann. Code art. 100, § 68 to the evidence produced at the hearing before the trial court, a

assault taking place away from strike scene, remoteness from labor dispute); United Aircraft Corp. v. International Ass'n of Machinists, 161 Conn. 79, 285 A. 2d 330 (1971) (Acts of violence occurring at locations away from strike scene); and, AFA Protection Systems v. Local 3, IBEW, 337 N.Y.S.2d. 599, 71 Misc. 2d 823 (1972) (The New York Anti-Injunction Statute is not as broad as Maryland's and the acts of violence took place over a longer time period.). *Contention B.* Milk Wagon Drivers' Union v. Lake Valley Farm Products, Inc., 311 U. S. 91, 61 S. Ct. 122, 85 L. Ed. 63 (1940); Lauf v. E.G. Shinner & Co., 303 U. S. 323, 58 S. Ct. 578, 82 L. Ed. 872 (1938); and, General Electric Co. v. Gojack, 68 F. Supp. 686 (N.D. Ind. 1946) (These cases discuss the strict terms of the Norris-La Guardia Act and the Sherman Anti-Trust Act. They do not hold that neighbors' discomfort occasioned by noise from a strike may not be considered in determining whether an injunction may issue.); League of Vol. Hosp. & Homes of N.Y. v. Local 1199, Drug & Hosp. Union, 490 F. 2d 1398 (Temp. Emer. Ct. App. 1973) and Potomac Electric Co. v. CORE, 210 F. Supp. 418 (D.C. 1962) (These cases describe examples of what can constitute substantial and irreparable injury. They do not set forth standards which must be met.); Wilkes-Barre Ind. Co. v. Newspaper Guild, Local 120, 455 Pa. 287, 314 A. 2d 251 (1974) (Applies the "clearly erroneous" standard of appellate review.). *Contention C.* San Diego Building Trades Council v. Garmon, 359 U. S. 236, 79 S. Ct. 773, 3 L.Ed.2d 775 (1959); International Union, UAW v. Russell, 356 U. S. 634, 78 S. Ct. 932, 2 L.Ed.2d 1030 (1958); United Construction Workers v. Laburnum, 347 U. S. 656, 74 S. Ct. 833, 98 L. Ed. 1025 (1954) (State courts have jurisdiction to entertain damage suits arising from a labor dispute.). *Contention D.* Green v. Obergfell, 121 F. 2d 46 (D.C. 1941) (Violence occurring four (4) years prior to suit is too remote to be considered.); Cupples Co. v. AFL, 20 F. Supp. 894 (E.D. Mo. 1937) (To support finding that police protection was inadequate, courts do not have to wait for a definite declaration that police are unwilling to act nor wait for actual bloodshed, strife and violence.); Miller v. Gallagher, 28 N.Y.S.2d 606, 176 Misc. 647 (1941) (Request for injunction against all picketing found to be an attempt, under the circumstances, to punish past offenses.).

summation of which we have heretofore recounted, and to the findings of the judge, it is manifest that those findings by the trial court comply completely with the statutory mandate. Moreover, we are unable to conclude that the findings of fact are clearly erroneous. Md. Rule 1086; *Md. Trust Co. v. Tulip Realty, supra; Sullivan v. Auslaender, supra.*

Union also argues that the Center did not comply with the expressed ukase of Md. Ann. Code art. 100, § 69 which provides:

> "No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available machinery or governmental mediation or voluntary arbitration, *but nothing herein contained shall be deemed to require the court to await the action of any such tribunal if irreparable injury is threatened."* (Emphasis supplied.)

As we have earlier indicated, the Maryland Anti-Injunction Act is a sibling of the Norris-La Guardia Act, 29 U.S.C. §§ 101-115. Because of the paucity of Maryland cases interpreting the Maryland Act, we must look to federal decisions for guidance.

We construe § 69 to be a condition precedent to the granting of an injunction in a labor dispute. Thus, before the trial court may issue an injunction the complainant must show affirmative compliance with the section even though all the elements of § 68 are found to be present. *General Electric Co. v. Gojack,* 68 F. Supp. 686, 689 (N.D. Ind. 1946).[4]

---

4. *See also* Parade Publications, Inc. v. Philadelphia Mailers Union No. 14, 459 F. 2d 369 (3rd Cir. 1972); Rutland Ry. Corp. v. Brotherhood of Locomotive Engineers, 307 F. 2d 21 (2d Cir. 1962), *cert. denied,* 372 U. S. 954, 83 S. Ct. 949, 9 L.Ed.2d 978 (1963); Donnelly Garment Co. v. ILGW, 99 F. 2d 309 (8th Cir. 1938), *cert. denied,* 305 U. S. 662, 59 S. Ct. 364, 83 L. Ed. 430 (1939); and Dean v. Mayo, 8 F. Supp. 73 (D. La. 1934).

The italicized language of § 69 above does not permit a court to enjoin a strike because "irreparable injury is threatened" unless there first is shown full compliance with §§ 68 and 69. Once that compliance has been proven, however, the court need not await *the action* of any "governmental mediation or voluntary arbitration" to enjoin threatened or real irreparable injury.

We observe that the Supreme Court, in *Brotherhood of Railroad Trainmen v. Toledo, P. & W. R. Co.*, 321 U. S. 50, 64 S. Ct. 413, 88 L. Ed. 534, 150 A.L.R. 810 (1944) said of the Norris-La Guardia Act § 8, almost identical to Maryland Act § 69,[5] that:

> "In general the Act [Norris-La Guardia] was not intended to interfere with the power to restrain violent acts. And it was contemplated expressly the court might intervene to prevent them, when the particular circumstances show the complainant has had no opportunity to comply with such requirements as those of § 8. But one major purpose of the Act was to prevent the use of injunction improperly as a strikebreaking implement. And the discussion of § 8 in the Congressional debates shows that, while it would not apply if on the facts the complainant could not meet its terms, it was intended to apply when he had had ample opportunity but refused to do so. This is clear not only from Representative O'Connor's 'clean hands' characterization of the section, but also from the general character of the discussion regarding it. Most, if not all, of the objection was upon the mistaken view that § 8 would apply even though the complainant might have no notice or knowledge of the facts calling for him to take the conciliatory steps before seeking injunctive relief. What has been said above shows this was not the intent or effect of the section.

5. The federal act does not contain ". . . but nothing herein contained shall be deemed to require the court to await the action of any such tribunal if irreparable injury is threatened."

There was indeed no expression of concern for the complainant who, having full opportunity to comply with the section, might refuse deliberately and steadfastly to do so. On the contrary, it appears to have been understood clearly he would be remitted to other forms of relief not touched by the Act." (Footnotes omitted.) 321 U. S. at 65-66, 64 S. Ct. at 421-22, 88 L. Ed. at 543-44, 150 A.L.R. at 818-19.

Paraphrasing what Judge Johnsen said in *International Ass'n of Bridge, etc. Workers v. Pauly Jail Bldg. Co.*, 118 F. 2d 615, 616-17 (8th Cir.), *cert. denied*, 314 U. S. 639, 62 S. Ct. 75, 86 L. Ed. 513 (1941), of the Norris-La Guardia Act and transposing it to the Maryland Act, strict compliance with its terms is mandatory. The very purpose of injunctive relief in a labor dispute, no matter how narrowly the injunction be drawn, is to tip the scale of the controversy. Such an event is the very iniquity the Act was designed to prevent.

Except for the failure of the complainant, Center, to demonstrate that it had met the requirement of Section 69 overtly or was prevented from meeting those requirements, *Brotherhood of Railroad Trainmen v. Toledo, P. & W. R. Co.*, *supra*, 321 U. S. at 66, 64 S. Ct. at 422, 88 L. Ed. at 544, 150 A.L.R. at 819, the injunction in this case would have been properly issued. The record, however, is silent with respect to compliance or inability to comply with § 69. That silence is, in the instant case, fatal to the relief sought, and the trial court should not have issued, under the circumstances, the requested injunction.

We believe that by the enactment of Md. Ann. Code art. 100, § 69, particularly when read together with the legislative purpose articulated in § 63 thereof, that § 69 sets forth a condition precedent to equitable relief, that chancellors may not ignore, no matter how loudly the other facts seem to cry out for such relief. *General Electric v. Gojack, supra.* The legislatively created barrier was not overcome by Center and the injunction was improperly issued.

*Order reversed.*
*Costs to be paid by appellee.*