583 A.2d 1092
**WEIS MARKETS, INC., et al.**

v.

**UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 400, AFL–CIO, CLC, et al.**

**No. 31, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 11, 1991.

Roger S. Kaplan (Robert Lewis, Thomas P. Piekara and Jackson, Lewis, Schnitzler & Krupman, New York City, Jeffrey P. Ayres and Venable, Baetjer & Howard, Baltimore, on the brief), for appellants.

Barry H. Helfand, Rockville (Carey R. Butsavage and Baptiste & Wilder, P.C., Washington, D.C., on the brief), for appellees.

Argued before MOYLAN, BLOOM and JAMES S. GETTY (Retired), Specially Assigned, JJ.

JAMES S. GETTY, Judge, Retired, Specially Assigned.

Weis Markets, Inc. and West Side Associates (hereinafter referred to collectively as Weis), appeal from a decision of the Circuit Court for Montgomery County denying appellants' petition for an injunction restraining United Food and Commercial Workers, AFL–CIO, Local 400 (hereinafter referred to as Local 400) from engaging in informational picketing on appellants' property.

West Side Associates owns and manages a shopping center in Gaithersburg, Maryland. Weis Markets, Inc., owns and operates a supermarket within the center and is the owner of an undivided 16% interest in the common area of the center. The parking lot and driveway in front of the supermarket are referred to as common elements, and the sidewalk adjacent to the store, including the pick-up area at the front of the sidewalk, is designated as a limited common element. These common elements are reserved to Weis in the Declaration of Condominium incorporated by reference in the Weis deed.

Weis has constructed a canopy over the sidewalk and an intermittent metal railing at the outer edge of the walk. Beneath the canopy are 300 shopping carts which narrow

the pedestrian area from 12 to 8 feet. A customer takes a cart inside the store, selects and pays for his purchases and returns to the sidewalk area. Employees stationed on the porch area watch the merchandise while the customer brings his vehicle to the front of the market. The employees transfer the merchandise to the vehicle and return the cart to the storage area.

Since October 1, 1988, Weis has posted a sign on the outside wall of the store stating:

"Solicitation, Distribution of Literature or Trespassing by non-employees on these premises is Prohibited. Weis Markets, Inc."

West Side, moreover, has posted signs informing the public that the shopping center is private property and that solicitation, loitering, or distribution of handbills is prohibited. West Side's Rules and Regulations prohibit picketing, solicitation and distribution of literature in the common areas.

Weis's no trespassing policy has been strictly enforced despite requests from fraternal, charitable, religious and other organizations seeking permission to hand out literature, conduct sales or collect money on the premises.

On November 2, 1989, Local 400 established a picket line numbering 24 people, including one attired in a seven-foot tall rat suit, under the canopy or porch area of the supermarket. The pickets wore signs requesting that customers not shop at Weis, they distributed literature to Weis customers and verbally requested that the customers patronize a Weis competitor.

Varying in number from 2 to 11, the picketers continued for an additional 6 days over the next several weeks. Offers to compromise by allowing pickets on the island next to the pick-up area were refused by Local 400 and, to eliminate the interruption of its business, Weis sought an injunction. A temporary restraining order issued by the circuit court limited the number of pickets. Thereafter, Local 400 filed a motion to dismiss the complaint contending that the court lacked jurisdiction to grant relief by reason

of the Maryland Anti–Injunction Act and the National Labor Relations Act. Local 400 also alleged that it did not engage in criminal trespass and that under Maryland law an injunction was not obtainable even if the court had jurisdiction.

On November 29 the circuit court dismissed the case for lack of jurisdiction under Article 100, Section 65 of the Maryland Anti–Injunction Act. This appeal followed.

The trial judge concluded as follows:

I do not believe any of the defendants' actions have risen to the status of a criminal trespass. I do, however, believe that for the purpose of this proceeding that the defendant Union is chargeable with a civil trespass. Having made such a finding, were this a case for a traditional equitable injunction, without more—even though such relief is an extraordinary remedy, I would be inclined to grant such an injunction; however, labor disputes have generated much federal and state legislation, and I am prohibited from granting an injunction unless I find all of the following, and what I find very germane in making this decision is two sections of Article 100 which deals with work, labor and employment in Maryland, particularly Section 65(e) [1] which makes a court without jurisdiction to grant an injunction where the action involved is giving publicity to or obtaining or communicating information regarding the existence of or the facts involved in any dispute whether by advertising, speaking, patrolling any public street or any place where any person or persons may lawfully be even with intimidation, and I add the word intimidation,[2] or coercion or by any other meth-

---

1. The correct citation is Article 100 Section 65(5).

2. Section 65 of Article 100 was first enacted by Chapter 574 of the Acts of 1935 wherein thirteen new sections were added to Article 100 of the Annotated Code of Maryland (1924 Edition) relating to the jurisdiction of courts in cases involving labor disputes. The new sections were numbered 65 to 77 and remain substantially unchanged, or at least as far as the public policy of the State is expressed, until the present.

od so long as that method does not involve, and I am freely interjecting words in here, fraud, violence, breach of the peace or threat thereof....

The issues raised by this appeal are:

1. Whether the trial court erred in concluding that Section 65 of the Maryland Anti–Injunction Act deprived it of jurisdiction to enjoin appellee's picketing.

2. Whether the trial court erred in concluding that the conditions necessary to enjoin appellee's conduct under Section 68 of the Anti–Injunction Act were not established.

3. Whether the matter is preempted by federal law, since the dispute is within the jurisdiction of the national Labor Relations Board.

A brief review of the history of the Maryland Anti–Injunction Act and the case law, primarily federal case law due to the paucity of Maryland cases, is meaningful in deciding the issues raised herein.

Maryland's Anti–Injunction Act, sometimes called "Maryland's Little Norris–LaGuardia Act," was passed as a supplement to the Norris–LaGuardia Act, 29 U.S.C. §§ 101–115,

---

Article 100, Section 65 as it now appears in the Code was initially section 67 at the time of its adoption. The wording, however, has not changed in the ensuing 55 years. We note that the court emphasized that portion of 65(5) which states that courts are without jurisdiction to issue an injunction where any person or persons may be communicating information or patrolling any place where they may lawfully be "with intimidation or coercion."

We suggest that the word "with" in subsection (5) was intended to be "without" and that the error has gone unnoticed or unchallenged for 55 years. Pellucidly, it is neither the public policy of Maryland, nor the intent of the Legislature to allow informational picketing by the use of intimidation or coercion.

The use of the word "without" is, moreover, consistent with the remainder of the phrase. Properly phrased, 65(5) establishes that courts may not enjoin any of the enumerated acts that are undertaken "with[out] intimidation or coercion, or by any other method not involving fraud, violence, breach of the peace, or threat thereof." As counsel for the appellant suggests, the error may have arisen from the adoption of an identical Wisconsin Statute (103.53, sec. (1) and (2), Lawful Conditions in Labor Disputes) where the term is "without," etc.

to "abridge substantially the authority of courts of equity to issue injunctions in matters involving labor disputes...." *National Union of Hospital and Health Care Employees District 1199E v. Lafayette Square Nursery Center, Inc.,* 34 Md.App. 619, 628, 368 A.2d 1099 (1977).

Thus, art. 100, § 63, titled "Declaration of policy" provides in pertinent part:

> In the interpretation and application of this subtitle, the public policy of this State is declared to be as follows: Negotiations of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract, and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman *have* full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

Md.Ann.Code art. 100, § 63 (1985 Repl.Vol.). The plain language of the Act clearly states the purpose and legislative intent.

In *Logan Valley Plaza, Inc. and Weis Markets, Inc. v. Amalgamated Food Employees Union Local 590,* 425 Pa. 382, 227 A.2d 874 (1967), the Pennsylvania Supreme Court, notwithstanding the Pennsylvania Anti–Injunction Act of 1937, affirmed a lower court injunction against picketing by 13 pickets on a Weis Market porch and parcel pick-up zone at a shopping center in Altoona, Pennsylvania. The Court

held the Anti–Injunction Act to be inapplicable since the trespassory nature of the picketing made it unlawful.

On further appeal, the United States Supreme Court held that the union's picketing was protected by the First Amendment. "Because the Pennsylvania courts have held that 'picketing and trespassing' can be prohibited absolutely on respondents' (shopping center) premises," the Supreme Court said, "... we have no occasion to consider the extent to which respondents are entitled to limit the location and manner of the picketing or the number of pickets within the mall in order to prevent interference with either access to the market building or vehicular use of the parcel pickup area and parking lot." *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 321, 88 S.Ct. 1601, 1610, 20 L.Ed.2d 603, 613 (1968).

Four years after deciding *Logan Valley*, the Court considered the scope of a shopping center owner's property rights in *Lloyd Corp. Ltd. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). The center strictly enforced a policy banning distribution of handbills and ejected individuals protesting the Vietnam War. Citing *Logan Valley*, the protestors sought an injunction against the handbill prohibition. The Court held that the picketers had no First Amendment right to protest political activity on the center's private property. Citing the dissenting opinion of Justice Black and Justice White in *Logan Valley*, the Court noted:

> Respondent's argument ... misapprehends the scope of the invitation extended to the public. The invitation is to come to the Center to do business with the tenants.... There is no open-ended invitation to the public to use the Center for any and all purposes, however incompatible with the interests of both the stores and the shoppers whom they serve.

*Id.* at 407 U.S. 564–65, 92 S.Ct. at 2227, 33 L.Ed.2d at 140. Four years after *Lloyd*, the Court overruled its *Logan Valley* decision that a union had a First Amendment constitutional right to picket a shopping plaza. *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).

In *Hudgens,* striking employees of a shoe company warehouse attempted to extend their picketing to the shoe company's retail store located in a shopping center.

█ The trial court in the case *sub judice* did not expressly state whether it found the porch and loading dock area of the Weis store to be public or private property, although the court indicated that the area was private when it framed the issue as:

I think the entire gist of this action involves whether, in fact, *because this is private property,* as to whether really there was an unlawful trespass, and there is no question that the property is posted against soliciting and passing out handbills. (Emphasis supplied.)

The court concluded that the union activities did not rise to the level of a criminal trespass, but the activity of those engaged in picketing constituted a civil trespass which, the court stated, it would enjoin except for Section 65(5). That section, however, is applicable only if the activity in question occurs where "any person may lawfully be." If, as the court decided, the picketers were trespassers, their presence was not lawful irrespective of whether it was criminal. For purposes of section 65(5), a distinction between civil and criminal trespass is of little consequence. Section 65(5) requires a "lawful" presence. To be unlawful, an action need not be criminal. *See Black's Law Dictionary* 1536 (6th ed.1990) (the term unlawful "[w]hile necessarily not implying the element of criminality . . . is broad enough to include it"). We shall remand this case to the circuit court for further proceedings since the court was not without jurisdiction to consider issuing an injunction based upon section 65(5) if the court finds that the picketers were not in a place where they "may lawfully be."

Ironically, if the porch and loading area are private property and picketing thereon is deemed lawful, the picketers, arguably, could enter the store and conduct peaceful informational picketing at the check-out counter, while the Salvation Army, Santa Claus, and the Girl Scouts, among others, would be prohibited from any type of solicitation either

inside the store or outside in the porch area. There is no doctrine dedicating private property to public use for the benefit of any group involving property used non-discriminatorily for private purposes. As Justice Black stated in his dissenting opinion in *Logan Valley, supra:*

> To hold that store owners are compelled by law to supply picketing areas for pickets to drive store customers away is to create a court-made law wholly disregarding the constitutional basis on which private ownership of property rests in this country.

391 U.S. at 332–33, 88 S.Ct. at 1616, 20 L.Ed.2d at 620.

We do not suggest that if the trial court on remand decides to issue an injunction that Local 400 would be barred from peaceful picketing of Weis within the shopping plaza property. Obviously, they have such a right subject to regulation as to where their activities take place apart from the store itself. An accommodation must be obtained between the right of peaceful picketing and the property rights of the owner "with as little destruction of one as is consistent with the maintenance of the other." *See NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975, 982–83 (1956).

■ Article 100, sec. 68, sets forth the facts that must be found, after an evidentiary hearing, in order that the trial court has jurisdiction to issue an injunction in a case arising from a labor dispute, namely:

1. *Acts committed.*—That unlawful acts have been threatened or committed and will be executed or continued unless restrained;

2. *Injury—In general.*—That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

3. *Same—Extent.*—That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon defendant by the granting thereof;

4. *Jurisdiction.*—That no item of relief granted is relief that a court or judge thereof has no jurisdiction to restrain or enjoin under § 65 of this article;

5. *No remedy at law.*—That complainant has no adequate remedy at law; and

6. *Failure to protect property.*—That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection.

The trial court made no specific finding as to 1 and 2 above. It found for Weis as to 3, 5, and 6 and found for Local 400 as to 4, which we hold should be remanded for further consideration due to the conflict resulting from the court's finding of trespass and its mistaken belief that it was without jurisdiction to proceed despite the trespass. On remand, the court should make specific findings as to each of the six categories set forth in section 68.

■ We note that the trial court expressed some reservation as to the standard of proof required in deciding the trespass issues. Sec. 66 of article 100 provides that:

[N]o association ... participating ... in a labor dispute ... shall be held responsible ... in any civil action ... or in any criminal prosecution, for the unlawful acts of ... members ... except upon *proof by the weight of evidence* and without the aid of any presumptions of law or fact.... (Emphasis supplied.)

Clearly, proof by a preponderance of the evidence is the applicable standard.

■ The third and final issue raised by Local 400 suggests that the issues herein are preempted by federal law and the matter is within the jurisdiction of the NLRB, because the union filed an unfair labor practice charge against Weis. The record establishes that the filing of the charge was brought to the trial court's attention during the trial, but the court did not address it and the union did not raise the issue of the court's omission at the conclusion of the hearing. Since the preemption claim is one of jurisdic-

tion, Local 400 may raise it on appeal notwithstanding the trial court's *sub silentio* treatment. Md.Rule 8–131(a); *Resh v. Resh,* 271 Md. 133, 137, 314 A.2d 109 (1974); *Moore v. State,* 15 Md.App. 396, 399 n. 1, 291 A.2d 73 (1972).

*Sears, Roebuck & Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978), is dispositive of the preemption claim. The store owner sought an injunction after the carpenter's union refused to withdraw its pickets from the owner's property, including the sidewalk and parking area. The union's protest was over the use of non-union carpenters working inside the store. An injunction was issued by the trial court setting forth that the peaceful picketing violated state trespass laws, but the Supreme Court of California reversed, holding that the picketing was both arguably protected and prohibited under sections 7 and 8 of the National Labor Relations Act, thereby preempting state jurisdiction.

The United States Supreme Court reversed, holding that the state court's exercise of jurisdiction, limited to the trespassory aspects of the picketing, created no realistic interference with the National Labor Relations Board's primary jurisdiction to enforce federal law prohibition against unfair labor practices. The carpenter's union had not invoked the jurisdiction of the NLRB after being advised to remove the pickets. The Supreme Court, noting that "arguably" the picketing, though trespassory, was protected, concluded that:

> Nevertheless, permitting state courts to evaluate the merits of an argument that certain trespassory activity is protected does not create an unacceptable risk of interference with conduct which the Board, and a court reviewing the Board's decision, would find protected.

436 U.S. at 205, 98 S.Ct. at 1761, 56 L.Ed.2d at 230.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.