THOMAS F. MURPHY, as Treasurer of the National Executive Committee of Bricklayers' Unions, Locals Numbers 1, 9, 21, 30, 34, 37 and 41, Affiliated with the Bricklayers', Masons' and Plasterers' International Unions of America, and Unincorporated Associations Consisting of More Than Seven (7) Members and Others, Plaintiffs, v. SAM RALPH and HARRY ROSEN, Individually and as Copartners Doing Business under the Firm Name and Style of RALPH & ROSEN, Defendants.

Supreme Court, Special Term, New York County, September 9, 1937.

*Delson, Levin & Gordon* [*Max Delson* of counsel], for all plaintiffs except Local No. 37.

*John Braum,* for the plaintiff Local No. 37.

*Levy, Kornblum & Katz* [*Joseph Katz* of counsel], for the defendants.

POLETTI, J. On this motion for an injunction *pendente lite* on behalf of plaintiff unions to restrain the defendants from disregarding the terms of the agreement the opposition rests on three grounds: (1) That the agreement is unenforcible because it lacks mutuality; (2) that no injunction should issue because the plaintiffs have failed to perform the obligations imposed upon them by the contract, and hence do not come into equity with clean hands; and (3) that the plaintiff have failed to make out a case sufficiently complying with the requirements of section 876-a of the Civil Practice Act.

This court has already decided there is no such lack of mutuality as would preclude the enforcibility of a labor contract. The courts of this State have definitely rejected the defendants' argument. (*Dubinsky* v. *Blue Dale Dress Co., Inc.,* 162 Misc. 177; *Schlesinger* v. *Quinto,* 117 id. 735; affd., 201 App. Div. 487.) So have the courts of many other States. (*Weber* v. *Nasser,* [Cal. App.] 286 P. 1074; *Harper* v. *Local Union No. 520,* [Tex. Civ. App. 1932] 48 S. W. [2d] 1033, and see cases collated in 39 Yale Law Journal, 374.)

As to the defendants' second objection: The contract requires that the defendants employ union men, all of whom are to be furnished by the Bricklayers Central Employment Bureau at certain wages and for certain hours. The contract thus requires the defendants to do two things with respect to the men employed — they must be employed through the central bureau, and they must be union men. The breach complained of is that the defendants employed men of their own selection and who moreover were not union men, employed them for longer hours than the contract permitted, and paid them lower wages than the contract required.

Justification for these facts, which constituted a repudiation of the entire contract, is sought to be premised upon the contention that from the inception of the contract the men furnished by the central bureau were totally incompetent, that the defendants were consequently compelled to make frequent changes in personnel, and to discharge over the seven-week period to which the testimony is restricted from twenty or thirty men furnished to them pursuant to the contract. There can be no doubt that, if the men so furnished were incompetent, the defendants were justified in discharging

them, and it is equally certain that, had the men actually been incompetent, the defendants would have discharged them. With this in mind it is helpful to examine the time sheets over this seven-week period introduced into evidence as Plaintiff's Exhibit 4. These sheets show the names of fifteen different men employed by the defendants through the central bureau. Of the fifteen so listed, five worked for the entire seven weeks, one worked for six weeks, two for five weeks, two for four weeks, two for three weeks, one for two weeks, and two for one week. With few exceptions they all worked from thirty-two to forty hours per week.

The defendants, both by the terms of the agreement and by its actual operation, were not deprived of the right to discharge employees. At no time did the plaintiffs seek to force the defendants to employ incompetent workers.

The conduct of the defendants, after repudiating the agreement by employing non-union men on terms prohibited by the contract, strengthens the conclusion that the defendants found the agreement unworkable, not because of the incompetence of the men furnished by the central bureau, but because the defendants felt that they could not make any money if they were compelled to employ men upon the wages and hours basis of the contract. Certainly, had the defendants wished to make a *bona fide* attempt to carry out the contractual provisions, the defendants could have accepted the offer granting them the right to select forty per cent of the employees.

The court finds that the men furnished by the plaintiffs were employed by the defendants, consistently and continuously enough to rebut any claim of wholesale incompetence; that an offer to permit the defendants to select forty per cent of their employees was made by the plaintiffs and refused by the defendants; that after demand by the defendants special workmen were made available by the plaintiffs but the defendants never called upon them; and finally that there was no such breach by the plaintiffs as to justify the defendants in repudiating the entire agreement.

Nor is the court persuaded by the defendants' argument on the law. It is convinced that the plaintiffs' legal remedy is inadequate. (*Goldman* v. *Cohen*, 222 App. Div. 631.) " It is certain that the union has more at stake to preserve under this contract than the sum of the damages occasioned by the unlawful discharge of all of the members of the union." (*Goldman* v. *Cohen*, *supra*, at p. 633.) That an injunction *pendente lite* will give to the plaintiffs all the relief to which they would be entitled after a full trial is likewise no objection. That objection was apparent in *Schlesinger*

v. *Quinto* (*supra*), yet relief *pendente lite* was there upheld. (See 39 Yale Law Journal, 377, and 44 Harvard Law Review, 200, for additional instances where preliminary injunctions were issued against employers at the suit of labor organizations.)

Of course, it has not been necessary to call upon any public officers to protect the plaintiffs' property. But that is hardly a ground for denying the relief sought. Section 876-a of the Civil Practice Act required a finding that the public officers " have failed or *are unable* to furnish adequate protection." (Italics mine.) The instant situation, where plaintiffs are peacefully and pursuant to their legal prerogative attempting to prevent a violation of their contractual rights by appeal to the judiciary, is one where the public officers " are unable " to furnish adequate protection. (See *Remington Rand, Inc.*, v. *Crofoot*, 248 App. Div. 356, 360.)

In all other respects the court finds that plaintiffs have satisfied the requirements of section 876-a. Reasonable effort has been made to settle the dispute by negotiation or arbitration. On several occasions in May the plaintiffs met with the defendants at the formers' offices to negotiate a settlement; thereafter, in June, a union representative visited the defendants with a view to discussing and negotiating a settlement. In addition, the plaintiffs had several telephone conversations with the defendants, in each instance requesting that the parties meet for the purpose of discussing a settlement. The court finds that these attempts at settlement through negotiation were made by the plaintiffs in good faith and refused by the defendants.

Further proof of the plaintiffs' *bona fides* is found in their written offer made on July twenty-seventh to discontinue this action if the defendants would consent to mediate before the New York State Board of Mediation. The defendants contend that, since this offer to arbitrate before the State Board was not made until after the action was commenced, there has been a failure of compliance with subdivision 4 of section 876-a of the Civil Practice Act. The action was begun by the service of all papers on the defendants on July fourteenth. As noted, the written offer to arbitrate before the State Board was made by the plaintiffs on July twenty-seventh. The court cannot agree with the defendants that this two weeks' hiatus between the inception of the action and the offer to arbitrate compels it to disregard the offer. The statute only requires that attempts at settlement be made prior to the issuance of the injunction; it does not require the offer to be made prior to the institution of the action. But, apart from this, subdivision 4 of the section has been adequately complied with.

The final contention of the defendants is that greater harm will result to them from the granting of the injunction than will result to the plaintiffs from its denial. Of this the court is in no wise convinced. On the contrary, it appears that the reverse is true. The only harm, if harm it may be called, that will come to the defendants is that they will be compelled to abide by the terms of an agreement which they voluntarily executed. To the plaintiffs a denial of the relief sought will mean that its efforts, not only on behalf of its own members, but in its striving to establish a relationship which will benefit all workers in this field of occupation, will have received a set back, not easily regained. The making of collective labor agreements has been one of the most important goals of union labor policy. It is a policy that the court believes works as much to the advantage of the employers in stabilizing labor conditions as to the employee in making for a better standard of living, and as such is entitled to the full protection of our courts.

The motion is granted. Bond is fixed in the sum of $1,000. Settle order.