## Yost et al. v. Finch

*Edward G. Wink* and *Darlington Hoopes*, for plaintiffs.

*Clarence C. Mendelsohn* and *C. Wilson Austin*, for defendant.

MAYS, J., October 3, 1938.—On July 1, 1938, plaintiffs above named filed a bill in equity praying that an injunction be issued, preliminary until final hearing, and final thereafter, ordering and directing that defendant, W. S. Finch, be enjoined from violating a contract entered into with Reading Projectionists Local No. 661 of

International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, and particularly that defendant be enjoined from employing any moving picture machine operators other than those supplied by said Local No. 661, in accordance with said contract.

On July 7, 1938, at a preliminary hearing, it was ordered that the dispute between plaintiffs and defendant be arbitrated. Plaintiffs and defendant each chose two arbitrators, and these four selected an additional arbitrator, who, after hearing, made report to the court that the union employes were to be reinstated, which was accordingly done by defendant.

On July 15, 1938, defendant filed an answer raising preliminary objections to the bill.

In Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11, it was held: "A bill in equity should not be dismissed because of objections made under Equity Rule 48, unless the facts averred show that plaintiff cannot possibly recover."

In Schlesinger, etc., et al. v. Quinto, etc., et al., 201 App. Div. 487, 194 N. Y. Supp. 401 (1922), the employers argued that a contract for personal services could not be enforced, except where the services were unique or extraordinary, and that therefore there was a lack of mutuality of remedy under the contract. The court said (p. 498):

"The instant case does not arise out of contract for individual employment. Two organizations, one composed of employers and the other of employees, have entered into an agreement. Each had power through the consent of its members to enter into a binding obligation in their behalf. By the constitution or by-laws of each, power is given to the organization to enforce, through disciplinary proceedings which have been demonstrated to be effective, compliance with the terms and conditions to which it has subscribed. This contract has mutual obligations binding on the parties thereto. Each party knows the obligation

that it has assumed and the consequences of failure or refusal to perform those requirements. Through its control of its members it can compel performance. Under such circumstances, a decree of a court of equity can be enforced against either party and in favor of the other. (*Grassi Contracting Co.* v. *Bennett*, 174 App. Div. 244, 248.) An organization, having such power to require performance by individual members, can through its officers be compelled to exercise that power. There is in this contract a mutuality of obligation, and there is also a mutuality of remedy for its enforcement."

In Murphy et al. v. Ralph et al., 165 Misc. 335, 299 N. Y. Supp. 270, a suit to restrain an employer from violating an agreement for employment of union men at certain wages and for certain hours, Justice Poletti said (p. 337):

"Nor is the court persuaded by the defendants' argument on the law. It is convinced that the plaintiffs' legal remedy is inadequate. (*Goldman* v. *Cohen*, 222 App. Div. 631.) 'It is certain that the union has more at stake to preserve under this contract than the sum of the damages occasioned by the unlawful discharge of all of the members of the union.' . . . That an injunction *pendente lite* will given to the plaintiffs all the relief to which they would be entitled after a full trial is likewise no objection. That objection was apparent in *Schlesinger* v. *Quinto* (*supra*), yet relief *pendente lite* was there upheld. (See 39 Yale Law Journal 377, and 44 Harvard Law Review, 200, for additional instances where preliminary injunctions were issued against employers at the suit of labor organizations.)"

It is not necessary for us now to say that this is the law of the instant case, but in the absence of any decisions of the courts of this Commonwealth (none have been pointed out to us and we have found none), surely what was decided by a court of competent jurisdiction of a sister State justifies the conclusion arrived at that under the

facts of the instant case there is at least a possibility that plaintiffs can recover.

And now, to wit, October 3, 1938, the objections raised to the bill are overruled, and defendant is directed to answer the bill within 15 days after notice hereof, under penalty of having the bill taken pro confesso.