Sidney **DANIELSON**, Regional Director of Region 2 of the National Labor Relations Board for and on behalf of the National Labor Relations Board, Petitioner,

v.

**JOINT BOARD OF COAT, SUIT AND ALLIED GARMENT WORKERS UNIONS, ILGWU, AFL–CIO,** Respondent.

No. 73 Civ. 4627.

United States District Court, S. D. New York.

Nov. 12, 1973.

Peter G. Nash, Gen. Counsel, N. L. R. B., New York City, for petitioner; John S. Irving, Deputy Gen. Counsel, Gerald Brissman, Associate Gen. Counsel, Winifred D. Morio, Regional Atty., Region 2, Raymond P. Green, Atty., New York City, of counsel.

Schlesinger, Schlesinger, & Schlesinger, New York City, for respondent; Emil Schlesinger, New York City, of counsel.

GURFEIN, District Judge:

A petition was filed in this Court by the Regional Director of the National Labor Relations Board (the "Board") pursuant to Section 10($l$) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160($l$)), for a temporary injunction pending the final disposition of the matter involved in a charge filed by Hazantown, Inc., pending before the Board, alleging that respondent, Joint Board of Coat, Suit and Allied Garment Workers Union, ILGWU, AFL–CIO (the "Joint Board"), has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act.[1] The petition is predicated on petitioner's conclusion that there is reasonable cause to believe that the respondent

---

1. Section 8(b)(7)(C) reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

. . . . .

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative unless such labor organization is currently certified as the representative of such employees:

. . . . .

(C) where such picketing has been conducted without a petition under section 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 9(c)(1) or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services."

has engaged in the unfair labor practices charged and that complaints of the Board based on the charges should issue under Section 10(*l*) of the Act. A short evidentiary hearing was held on Thursday, November 8, 1973.

The facts are not in serious dispute. Hazantown filed a charge with the Board that the respondent Union on September 12, 1973 threatened to picket it and has, since September 17, 1973, continued to picket for the purpose of obtaining recognition, and has not filed a petition for election within that period of time which exceeds thirty days.

Hazantown is a New York corporation engaged in the business of importing and manufacturing garments. In the course and conduct of its business operations, Hazantown, in the past year purchased and caused to be delivered to it goods and materials valued in excess of $50,000 from states other than the State of New York and from firms located outside the United States.

In relation to its manufacturing operations, Hazantown follows the predominant pattern of the garment industry in New York. That is, it purchases raw materials from suppliers, delivers such materials to contractors who manufacture finished garments and upon their return to Hazantown, it sells the garments to retail establishments. Accordingly, the number of functions and employees of Hazantown in relation to the direct manufacture of garments is quite limited. Hazantown arranges for, rather than engages in, the direct manufacture of the garments it sells.

On September 12, 1973, Hazantown was visited by agents of the Joint Board. The agents who visited the shop were Bernard Saslaw and Louis Fradkin. After identifying themselves, Saslaw and Fradkin said that they would like Hazantown to sign a contract with the union. When this demand was rejected, Saslaw stated that unless the company signed up immediately they would strike and engage in picketing.

On Monday, September 17, 1973, the Joint Board commenced picketing Hazantown at the building in which the company is located on Eighth Avenue, New York City. This picketing has been carried out continuously to date. The Joint Board has not filed any representation petition pursuant to Section 9(c) of the Act. The picket signs being utilized read:

Strike
Hazantown, Inc.
Mary Allen Payne

Joint Board, Cloak, Suit, Skirt, and Reefer Makers' Unions, ILGWU

None of the employees of Hazantown has participated in the picketing and none has engaged in a strike against their employer. There can be no doubt that the picketing which commenced on September 17, 1973 is in furtherance of the demands by Saslaw and Fradkin made on the employer on September 12, 1973, i. e., the demand that Hazantown, as a jobber, execute a contract with the union.

The Joint Board by letter dated October 18, 1973 notified Hazantown that the Joint Board desired the company to sign a "jobbers' agreement, under which your firm would obligate itself to send work to or deal only with union contractors, i. e., contractors whose employees are already represented by our Union." Respondent in this letter also disclaimed any interest in representing Hazantown's direct employees.

I find that the sole purpose of the strike was to obtain from Hazantown a jobber's agreement which would require Hazantown to agree, among other things, to deal with union contractors, that is, contractors who are in contractual relations with the respondent union, and to guarantee certain obligations which such union contractor has to its workers under its labor agreement with the respondent union. I find that there was no intention to enroll the direct employees in the union and that they were not the type of worker which the union generally recruits for membership. I

find that, in this industry, the employees of contractors are not employees of the jobbers themselves. I find that the effect of the picketing was to induce a stoppage of deliveries, as shown by reports of truckers received in evidence.

The issue is fairly joined. The Petitioner says that the attempt by the Union to make the jobber sign an agreement with it is an attempt to "require the employer to recognize or bargain with a labor organization as the representative of his employees." Section 8(b)(7). The Union responds that it is not seeking to bargain "for his employees," since the employer has no direct employees. The Union relies, in part, on the exemption contained in Section 8(e) of the Act. That section, in pertinent part, provides that "[i]t shall be an unfair labor practice for any labor organization . . . to enter into any contract . . . whereby such employer . . . agrees . . . to cease doing business with any other person," but it provides, among other things, that " 'any other person' shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the *apparel and clothing industry*." (Emphasis supplied).

The Union argues that the Congress intended to give the right to the garment unions to make contracts with jobbers relating to the exclusive use of contract shops which employ union labor. The legislative history which has been stipulated supports that. The petitioner contends, however, that while such agreements may be legal, the union may not resort to picketing for "recognition" to obtain them. The union says it is not seeking "recognition" because it is not seeking to organize "his" employees,

that is, the jobber's employees. The petitioner suggests that the union is trying to make Hazantown a "joint employer" with its contractors through the execution of the jobber's agreement. The petitioner contends that since the picketing has been conducted beyond the thirty-day limit imposed under Section 8(b)(7)(C), Dallas Building and Construction Trades Council v. N. L. R. B., 130 U.S.App.D.C. 28, 396 F.2d 677 (1968) and Samoff v. Building and Construction Trades Council of Philadelphia and Vicinity, 475 F.2d 203 (3 Cir. 1973), control in his favor.

In *Dallas,* supra, the union contended that Section 8(b)(7) did not apply, because it sought merely to have the employer execute a contract whereby the employer would subcontract only to companies having contracts with the union, and disclaimed any interest in representing the employees of the picketing employer. The Court of Appeals for the District of Columbia held that, despite an exemption which made valid an agreement in the *construction industry* relating to subcontracting (an exemption somewhat like the apparel industry exemption), the lawfulness of a proposed agreement under Section 8(e) does not conclude the question of whether picketing to get it under the circumstances recited in Section 8(b)(7) may be an unfair labor practice.

*Dallas,* supra, may be distinguished from the case at bar, because there was a finding that direct employees of the employer were sometimes given work otherwise done by employees of the subcontractor and were, therefore, affected.[2] Here there is no such possibility.

While in *Samoff,* supra, the district court's refusal of a temporary injunction to the Board under Section 10(*l*) was reversed on facts similar to those in *Dallas,* supra, that case, too, if it had been a

---

**2.** The court itself recognized the distinction, when it said: "Moreover, even picketing is permissible if the coverage of the proposed contract is limited to the type of work which is *never* performed by the general contractor's own employees." 396 F.2d at 682, n. 8. (Emphasis supplied) And see IBEW, Local 903 (Pass Development, Inc.), 154 NLRB 169 (1963).

decision on the merits, would have been distinguishable, because contracting out work which *might* be performed by Long's *own* employees was treated by the Board as a term or condition of employment of Long's employees.

I have no difficulty in distinguishing *Dallas,* but the petitioner does not agree. I am inclined to think that this kind of picketing in the garment industry comes within the policy exemption provided by the Congress in Section 8(e) as it is a logical concomitant to protect its own workers, as well as complying competitors in an industry so structured. The petitioner does not agree. I cannot say that the Board's view is insubstantial or frivolous. The issue, therefore, becomes acutely the scope of jurisdiction of the district court.

■ The jurisdiction of this Court is narrow. The Court of Appeals has recently said: "It is beyond any question that the role of a district court in a Section 10(*l*) proceeding is not to adjudicate the merits of the alleged violation, but rather to decide whether the Regional Director [of the Board] had reasonable cause to believe that the respondent has violated the Act. Reasonable cause has been interpreted to mean that there must be a 'reasonable possibility' that the Board will sustain the unfair labor practice charge. McLeod for and on Behalf of N. L. R. B. v. Local 25, IBEW, 344 F.2d 634, 368 (2 Cir. 1965)." Kaynard v. Independent Routemen's Association, 479 F.2d 1070 (2 Cir. 1973). It is reversible error for the court not to limit itself to that question. Id.

In *McLeod,* supra, Mr. Justice Marshall (then Circuit Judge) wrote:

"Section 10(*l*) merely provides a means of preserving the status quo while the unfair labor practice charge is being adjudicated. When relief is sought under § 10(*l*), the Board, rather than the federal district court, remains the 'primary fact finder' and 'primary interpreter of the statutory scheme,' Schauffler v. Local 1291, Int'l Longshoremen's Ass'n, [3 Cir., 292 F.2d 182, 188], subject, of course, to judicial review by a court of appeals pursuant to § 10(e) and § 10(f). For the purpose of determining whether an unfair labor practice had been committed, it is the Board that initially finds the facts and *assesses the legal propositions* upon which the charge is predicated." 344 F.2d at 638. (Emphasis supplied)

■ It is beyond the competence of the District Court to determine the important question of statutory construction here involved. That is, initially, for the Board, and then for the Court of Appeals.

■ Though the district court has no jurisdiction to determine the statutory construction while the Board has the matter before it, the district court does have the duty to determine whether temporary injunctive relief would be "just and proper." Section 10(*l*); Danielson v. Local 275, Laborers International Union of North America, AFL–CIO, 479 F.2d 1033, 1037 (2 Cir. 1973).

In the case at bar, there has been a showing that the existence of the picket line has induced truckmen not to cross it for the delivery or shipment of goods. It cannot be gainsaid that the business of Hazantown has been seriously affected. I must conclude, therefore, regardless of my own view on the merits, that under my duty to enforce the status quo ante while the Board hears the matter, a temporary injunction must issue.

The foregoing represent findings of fact and conclusions of law under Fed. R.Civ.P. 52(a).

Submit an order on two days notice.