KAY-FRIES, INC. Respondent-Appellant, v FRANK D. MARTINO, Individually and as President of International Chemical Workers Union, AFL-CIO, et al., Appellants-Respondents.

Second Department, March 31, 1980

## APPEARANCES OF COUNSEL

*Sipser, Weinstock, Harper, Dorn & Leibowitz (Susan Martin, I. Philip Sipser* and *Donald E. Klein* of counsel), for appellants-respondents.

*Romano, Cohen & Icobelli (Sanford Cohen* and *George J. Malinsky* of counsel), for respondent-appellant.

344

Mangano, J. P.

This is an action for, *inter alia,* an injunction in a labor dispute. The litigation arises as a result of a strike against plaintiff, Kay-Fries, Inc., a manufacturer of intermediate organic chemicals at a 66-acre plant in Stony Point, Rockland County. The strike commenced July 1, 1979 and Kay-Fries, Inc. sought, by order to show cause dated July 2, 1979, to restrain defendants from obstructing ingress to and egress from the plant. On August 15, 1979, a hearing was held before the Supreme Court, Rockland County (Marbach, J.). On August 16, the court, in its oral decision at the end of the hearing, stated:

"I find such a course of violent, illegal and unlawful conduct, disorderly conduct, as to necessitate this Court exercising both statutory and inherent general jurisdiction to grant the injunction prayed for against Local 677 of the International Chemical Workers Union, A.F.L.-C.I.O., its officers, its board, executive committee, however designated, and all individuals acting in concert and together with them against interference with the free access to the plant and the grounds of the plaintiff Kay-Fries, Inc. of all persons legally entering thereon, against all acts of violence whatsoever, whether by the use of thrown objects or the placement of materials designed to slash or flatten tires.

"I specifically enjoin the physical stepping in front of an automobile or truck of any person legally entering the plant.
* * *

"I do not enjoin the peaceful assembly of a limited number of pickets on the site which has been used as a matter of safety and convenience. The Court is aware from the charts here and from just a little bit of the testimony that the street is sometimes here referred to as a private street, but it appears to be used as a public road and used by a number of businesses and does not seem to be limited solely to the plaintiff; that Holt Drive [the street] and [Route] 9-W is a heavily travelled intersection and that there is no place along 9-W which is safe for the pickets. I will not enjoin the continued use of the area approximately 20 feet in from the highway [9W] as a site for general picketing. I enjoin the presence of any persons in addition to five at any one time at such picketing site, except one union official at any one time in addition to the pickets.

"The testimony here is that on many occasions there were six, seven, eight persons on one side or both sides of Holt Drive near the picket line. I order absolutely that such additional assemblage not continue.

"I limit the number of persons across the highway to not more than twelve at any one time. While I am conscious of the fact that this is property which does not belong to the plaintiff, it is clear from the testimony in this record that a great number of persons in direct apposition *[sic]* to each other in this union greatly increase the chances for exacerbating any particular incident."

The uncontradicted testimony of Kay-Fries' witnesses is replete with instances throughout July and August, 1979 of such particular unlawful acts as rock throwing and tire puncturing and slashing by union members, including one instance a week before the hearing in which a truck driver was struck by a rock hurled through his cab window. Some 19 cases of tires punctured by roofing nails, some coated with adhesive so as to be capable of upright placement on Holt Drive, were reported by Kay-Fries' security personnel, whose nightly "nail patrol" during its several weeks of existence had recovered nails on many of the days on Holt Drive, the sole access road to the plaintiff's property. The missiles utilized by the strikers damaged automobiles, trucks and plaintiff's guardhouse.

The parties had agreed to the positioning of pickets at a certain location on Holt Drive. Although usually only five pickets were positioned at that point, several others would be present at the roadside or would be summoned to that spot from across the highway (Route 9W), where they were located, with permission, under a tent on private property. The tactic was to surround vehicles using Holt Drive, usually upon their turning onto that road from Route 9W, and to permit the vehicles to advance only in slow stages by picketing directly in front of the vehicles. On several occasions one of the pickets would jump onto the hood of a passenger car as it was stopped at the picket line.

Official reports of the local police department, which did not have the manpower to assure adequate protection, showed that there had been 55 incidents during the strike, 30 of which resulted in criminal charges (harassment, reckless endangerment, disorderly conduct and malicious mischief), and 90% of which involved prosecutions against union members.

Participation in the complained-of incidents was not limited

to rank-and-file; at least one member of the local's executive board was directly involved.

Kay-Fries officials testified that the company had made reasonable efforts to negotiate and Kay-Fries' witnesses indicated that the pickets had not taken advantage of their close proximity during the induced traffic tie-ups or slow-downs to inform the drivers or passengers of the issues in the strike. This record amply justifies injunctive relief.

The judgment, drafted with the participation of counsel for both parties, enjoined commission or threats to commit acts of violence such as the throwing of objects or placing of nails so as to puncture tires, limited the number of pickets at the Holt Drive location to five (not including the advising union officer at the scene), required these pickets to move to the roadside and otherwise to refrain from interfering with incoming or outgoing traffic unless a driver were to stop voluntarily to permit face-to-face communication, and prohibited assembly within approximately 50 feet of the "T"-type intersection except for the designated Holt Drive picket site and the tent area across Route 9W from the Holt Drive entrance. The court limited to 12 the number of persons who could assemble in this tent area.

After defendants served their brief on appeal, which raised for the first time the sufficiency of the trial court's recitation of fact findings under subdivision 1 of section 807 of the Labor Law, plaintiff moved by order to show cause signed November 6, 1979 for an order "permitting the court to make findings of fact, nunc pro tunc, in accordance with § 807 of the Labor Law to be filed in the record of the case and further * * * resettl[ing] the Judgment dated August 23, 1979 to recite that it was based upon such findings of fact." By order entered November 13, 1979 the court denied the motion except to the extent that the opening paragraph of the court's oral decision, quoted above, was incorporated verbatim in the resettled judgment entered November 14, 1979, which in all other respects remained identical to the original judgment.

In so ruling on the motion, the court noted in its oral decision of November 8, 1979 that the original judgment had been executed by the court after review by counsel for both parties in conference. "No issue was raised by [defendants' counsel] as to the failure to incorporate in the judgment itself the findings of fact which I made from the Bench"; however, the court continued, the detailed recital of facts offered by

plaintiffs "goes beyond my language." The court stated: "I do not reject the proposed findings as not being reflected by the record. I don't think I have the power at this time to make those detailed specific findings. I made them in a general way, that I thought appropriate under the language of the statutes, and I think that it is a question only of form as to my right to now incorporate a finding previously made in a resettled judgment."

Defendants assign as error (1) the court's jurisdiction to issue the injunction; (2) the extent of the restraints imposed by the injunction; and (3) the finding that the union and its officers were responsible for the acts complained of. I reject defendants' contentions except that I would modify the extent of the injunction for the reasons set forth below. Before turning to that discussion, however, I address myself to the issue of whether the court's recitation of facts does pose a jurisdictional problem under section 807 of the Labor Law.

The language of section 807 parallels that of the Federal Norris-LaGuardia Act (US Code, tit 29, § 101 *et seq.*). Particularly, the "facts" and "acts" referred to in subdivision 1 of section 807 are apparently taken from sections 107 and 104, respectively, of title 29 of the United States Code. Further, section 107 of title 29 specifies that: *"No court of the United States shall have jurisdiction* to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute * * * except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and *except after findings of fact by the court,"* which findings are identical to those specified in section 807 (subd 1, pars [a]-[e]) of the Labor Law. (Emphasis supplied.)

Defendants point out that in construing the Federal provision, the United States Supreme Court in 1938 held that the failure to find facts was jurisdictional, relying on the language of section 107 as well as that of section 101 of title 29 of the United States Code, which specified that: *"No court of the United States * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter".* (Emphasis supplied.) The court stated: "The District Court made none of the required findings save as to irreparable injury and lack

of remedy at law. It follows that in issuing the injunction it exceeded its jurisdiction." *(Lauf v Shinner & Co.,* 303 US 323, 330.)

■ In the instant case, the trial court likewise failed to articulate either detailed findings of fact or the more concise findings as expressed in ultimate form in subdivision 1 of section 807. The issue is whether this defect is jurisdictional under New York law. It is not.

The equitable jurisdiction of the Supreme Court of the State of New York is constitutional, unlike the solely statutory jurisdiction of the Federal District Courts; the Supreme Court's competence to entertain an action for an injunction cannot be curtailed by an act of the Legislature. (See *De Hart v Hatch,* 3 Hun 375; *Niagara Falls Power Co. v Halpin,* 267 App Div 236; see, also, *Kagen v Kagen,* 21 NY2d 532; *Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159; *Sheldon v Sill,* 8 How [49 US] 441; *White v Fenner,* Fed Cas No. 17,547.) As the Court of Appeals said in describing section 876-a of the Civil Practice Act (predecessor of Labor Law, § 807, subd 1): "The effect of that statute is to prevent courts from enjoining peaceful picketing. It was never intended to deprive the Supreme Court of jurisdiction to enjoin dangerous, illegal acts which constituted disorderly conduct and breach of the peace. If such was its intent and effect it is to that extent unconstitutional and void as an attempt to abridge the jurisdiction of the Supreme Court, guaranteed by article VI, section 1, of the State Constitution." *(Busch Jewelry Co. v United Retail Employees' Union Local 830,* 281 NY 150, 156.)

There is a distinction, however, between the *"competence to entertain the suit",* as fixed by the Constitution, and the "power to *render a judgment on the merits",* as altered and regulated by the Legislature *(Thrasher v United States Liab. Ins. Co., supra,* p 166). Thus, the real issue raised by defendants is whether the Supreme Court's power to render a judgment on the merits in the case was affected by failure to comply with the directives of subdivision 1 of section 807 of the Labor Law. It would be instructive, accordingly, to see the extent to which the courts have actually complied with these directives.

In some of the cases the courts reported the required findings in their decisions—if only by summarily reciting the concise provisions of section 807 (subd 1, pars [a]-[f]). (See *Remington Rand v Crofoot,* 248 App Div 356, affd 279 NY 635;

*Meltex, Inc. v Livingston,* 208 Misc 1033; *Benedetto v O'Grady,* 14 Misc 2d 46; *Capital Newspapers Div.—Hearst Corp. v Vanderbilt,* 44 Misc 2d 542.) In *People ex rel. Sandnes v Sheriff of Kings County* (164 Misc 355, 361), an order of contempt for violating a labor injunction was successfully challenged in a habeas corpus proceeding; the court found the injunction was invalid on a number of grounds, including lack of notice and insufficiency of the complaint, and added: "Moreover, subdivision 1 of section 876-a [predecessor of Labor Law, § 807, subd 1] provides that no injunction may be issued in a case involving a labor dispute except 'after findings' of fact have been made by the court and filed in the record of the case. The learned justice [in issuing the injunction] made no such findings of fact, nor were any such findings filed."

Yet the requirement has been lightly treated or ignored without objection in other decisions. In *Busch Jewelry Co. v United Retail Employees' Union Local 830* (281 NY 150, 156, *supra),* the Court of Appeals upheld the issuance of the injunction: "The trial court has made every finding required by section 876-a of the Civil Practice Act." It had found "specifically" that objectionable union activities were likely to continue. The decisions of the Appellate Division and the trial court, however, reveal that only *some* of the required findings under section 876-a of the Civil Practice Act were articulated in either detailed or summary fashion in that case.

Other reported decisions in which not every fact required under subdivision 1 of section 807 was recited include *Grandview Dairy v O'Leary* (158 Misc 791), *Murphy v Ralph* (165 Misc 335), *Greater City Master Plumbers Assn. v Kahme* (6 NYS2d 589), *Uneeda Credit Clothing Stores v Briskin* (14 NYS2d 964), *Miller v Gallagher* (176 Misc 647), and *Triangle Finishing Corp. v Textile Workers Union of Amer.* (145 NYS2d 614).

The general requirement for formal findings of fact is set forth in CPLR 4213 (subd [b]), which provides that the court's decision "shall state the facts it deems essential."* This New York provision and its predecessor under the former Civil Practice Act (§ 440) have been the proper procedure since 1936, when the Legislature did away with the requirement for

---

* CPLR 4213 thus differs from the practice under subdivision (a) of rule 52 of the Federal Rules of Civil Procedure and the practice in most other jurisdictions, which requires a separate statement of findings of fact and conclusions of law. (4 Weinstein-Korn-Miller, NY Civ Prac, par 4213.06.)

the court to " 'state separately the facts found and conclusions of law' " (Mason v Lory Dress Co., 277 App Div 660, 663).

The determination of injunction matters under section 807 of the Labor Law and its Civil Practice Act predecessor invariably did not follow the letter of the law as to detailed findings of fact. Rather, such determinations usually included a general statement similar to that found in Miller v Gallagher (supra, p 653): "The issues tendered by the record have been fully disposed of herein and, therefore, it will not be necessary for the parties to submit a formal decision embodying findings of fact and conclusions of law."

Therefore, I am of the opinion that the requirement of subdivision 1 of section 807 for findings of fact to be filed in the record of the case is not jurisdictional but is nevertheless important for enlightenment of the parties and for effective, and swift, review on appeal. (See 4 Weinstein-Korn-Miller, NY Civ Prac, par 4213.07.) This court has the power to make any necessary findings if the record of the case, as it appears in the instant appeal, is complete, even if the trial court failed to state the essential facts. (See Keklak v Keklak, 49 AD2d 926; Matter of Romeo v Romeo, 40 AD2d 685; Mellon v Street, 23 AD2d 210, mot for lv to app den 16 NY2d 488; Weidman v Klot, 11 AD2d 641; Famous Sea Food House v Skouras, 272 App Div 258; see, also, Matter of Elmhurst Towers v Tax Comm. of City of N. Y., 34 AD2d 570.)

I also note that the facts specified in subdivision 1 of section 807 include four traditional elements necessary for the exercise of the court's equitable power to issue injunctions in nonlabor as well as in labor cases: "unlawful acts * * * or a breach of any contract" threatened or committed, which will be continued or executed unless restrained (par [a]); "substantial and irreparable injury to complainant's property" unless restrained (par [b]); balancing of the equities (par [c]); and lack of an adequate remedy at law (par [d]). (See 28 NY Jur, Injunctions, §§ 36, 38, 41, 45.)

Paragraph (f) of subdivision 1 of section 807 merely requires that the relief granted not contradict various laborers' rights, and thus is not concerned with the court's recitation of facts in the decision but with the court's order or judgment, which by definition must specify the rights and obligations of the parties. Thus, only paragraph (e) (police protection) is a peculiar prerequisite to a labor injunction, and defendants' trial

motion to dismiss on this ground was decided against them in an oral decision of the trial court.

Therefore, I find that the decision of the court recited some of the findings required by subdivision 1 of section 807 and as to the remainder not recited, this opinion has made such findings on behalf of this court.

■ I now address plaintiff's appeals from the order denying specific fact findings as well as from that part of the resettled judgment which recited what plaintiff argues is an insufficient recital for purposes of facilitating this court's review of the facts. Had plaintiff sought an order modifying the relief granted in the original judgment (i.e., change the substantive or decretal portions thereof), its appeal would be dismissed (see *Banat v Banat,* 41 AD2d 960; *Katz v Katz,* 13 AD2d 529, and cases cited therein). Here, however, the motion sought to modify the recital portion of the judgment, and an appeal from the denial of such a motion to resettle will lie (see *Bergin v Anderson,* 216 App Div 844; *Dewsnap v Matthews,* 118 App Div 789).

■■ Defendants urge that the motion to expand the recital to include the specifications of subdivision 1 of section 807 is jurisdictional and hence substantive; however, I have concluded that the fact findings under subdivision 1 are not jurisdictional. They also argue that the motion to resettle was untimely under CPLR 4405 as a posttrial motion under CPLR 4404 (subd [b]) to "make new findings of fact or * * * render a new decision"; however, as the defect was not substantive, the motion is more properly characterized as a motion to correct an irregularity pursuant to CPLR 5019 (subd [a]).

■ Although the granting of plaintiff's motion to resettle in its entirety would have aided this court in determining if the essential facts found by the trial court supported the relief granted, the record is sufficiently complete that this court can make the necessary findings of fact. Reversing the order denying specific fact finding and resettlement to include such fact finding would serve no purpose. Therefore, the order was properly made.

Another aspect of the validity of the injunction is whether the Supreme Court's inherent equitable jurisdiction was preempted by Federal law.

■ I agree with defendants to the extent that they characterize the dispute as a labor dispute defined by subdivision 10 of section 807 of the Labor Law such that, despite the refer-

ence by the trial court to "inherent general jurisdiction", the court's power was limited by section 807. (See *May's Furs & Ready-to-Wear v Bauer,* 282 NY 331; *Waldbaum, Inc. v United Farm Workers, AFL-CIO,* 87 Misc 2d 267.) I disagree, however, with defendants' assertion that the dispute was wholly outside the jurisdiction of the New York court. Although certain union activities are protected by Federal law, the State has the power to enjoin breaches of the peace and threats to public safety. (See *Allen-Bradley Local v Board,* 315 US 740; *Youngdahl v Rainfair, Inc.,* 355 US 131; *Baillis v Fuchs,* 283 NY 133.)

### THE EXTENT OF RESTRAINTS

■ The injunction prohibited, *inter alia,* the hindering of ingress and egress along Holt Drive, the threatening or committing of violence upon plant employees or guests, and the committing of any property destruction, with specific reference to the throwing of objects and the placing of nails so as to damage tires. Partly in support of these restraints, the trial court specified that only five pickets could be stationed at the agreed-on site near the Holt Drive-Route 9W intersection, and that these pickets had to move to the roadside upon the approach of vehicular traffic absent a voluntary stop by the driver of a vehicle to inquire about the strike. Given the traffic-stopping tactics of defendants and the expressed safety concerns of local police authorities about tie-ups at this intersection, I conclude that the restraints imposed were reasonable. For the same reason of safety, I conclude that the prohibition of defendants' assembly within 50 feet of the intersection was reasonable, except to the extent that the court limited to 12 the number of persons who could congregate under the tent on private property across Route 9W from the 5-member picketing site on Holt Drive. Given the prohibition of acts of violence or hindrance, I see no basis for the statement by the trial court "that a great number of persons in direct apposition *[sic]* to each other in this union greatly increases the chances for exacerbating any particular incident." The prohibition of violence and the restriction of union members and supporters to five at the picket site and to no specific number at the tent area in the immediate vicinity of the intersection adequately balances the union's right to communicate to the public with the public's (including management and workers) right to safety.

■ A further modification of the judgment is required to conform it with the requirement of subdivision 8 of section 807 of the Labor Law: "No permanent injunction shall remain in force for more than six months from the date on which the judgment is signed". As the purpose of the limitation is to assure that restraints are made only after a recent hearing, the date on which the judgment was signed is determined on this appeal to be the date the original order was signed and entered: August 23, 1979. (See *May's Furs & Ready-to-Wear v Bauer,* 282 NY 331, *supra.*)

### LIABILITY OF THE UNION AND OFFICERS

In their final point, defendants argue that the evidence fell short of proving participation in the acts of violence and destruction by the union. I have examined the record, however, and affirm the findings of the trial court that the union, its officers and members had engaged in the complained-of acts.

GIBBONS, RABIN and O'CONNOR, JJ., concur.

Appeals from (1) a judgment of the Supreme Court, Rockland County, entered Aguust 23, 1979, and (2) an order of the same court, entered November 13, 1979, dismissed, without costs or disbursements (see CPLR 5517; *Matter of Aho,* 39 NY2d 241, 248).

Resettled judgment of the same court, entered November 14, 1979, modified, on the law, (1) by deleting the ninth decretal paragraph thereof, (2) by deleting from the tenth decretal paragraph thereof the limitation on the number of persons in the location identified as the "tent" area, and (3) by adding thereto a provision that the injunction shall remain in effect for no more than six months from the date of the signing of the original judgment, August 23, 1979, unless extended pursuant to paragraph 8 of subdivision 1 of section 807 of the Labor Law. As so modified, resettled judgment affirmed, without costs or disbursements.