JOU-JOU DESIGNS, INC., Respondent, v INTERNATIONAL LA-
DIES' GARMENT WORKERS' UNION, LOCAL 23-25, Appel-
lant.

First Department, June 30, 1983

### APPEARANCES OF COUNSEL

*Eric B. Chaikin* of counsel (*Chaikin & Chaikin,* attor-
neys), for appellant.

*Herman E. Cooper* of counsel (*Jonathan L. Sulds* with
him on the brief; *Herman E. Cooper, P.C.,* attorney), for
respondent.

### OPINION OF THE COURT

ALEXANDER, J.

Local 23-25 of the International Ladies' Garment Work-
ers' Union (hereinafter Local 23-25) appeals from an order
of Special Term (HENRY R. WILLIAMS, J.), which denied its
motion to dismiss the within complaint for lack of subject
matter jurisdiction by reason of Federal pre-emption of this
"labor dispute" and failure to state a "labor dispute" cause
of action cognizable under section 807 of the New York
State Labor Law.

We reverse the order below and direct that the complaint be dismissed.

This action arises out of a dispute between the plaintiff Jou-Jou Designs, Inc. (Jou-Jou) and the defendant Local 23-25 regarding the union's entitlement to a "Hazantown Agreement". Jou-Jou is a New York corporation, engaged in the apparel and clothing industry and as is the common practice in that industry, Jou-Jou does not, itself, manufacture the garments it sells. Rather, it designs sample garment patterns which are furnished, along with material and manufacturing specifications to outside subcontractors who fabricate the garments in accordance with the specifications. The finished garments are then returned to Jou-Jou which markets them through retailers. Thus the actual manufacture of the garments is accomplished by workers employed by Jou-Jou's contractors working in the contractor's "outside" shop. Only a very few workers were required in Jou-Jou's "inside" shop, since essentially the only work required therein would be sample or pattern making and shipping and receiving chores.[1] A manufacturer who operates in this manner is known in the industry as a "jobber".

It appears that this method of operation was designed and widely employed by garment manufacturers in the New York area to avoid the impact of unionization on wages and other production costs, and for the over-all well-being of the garment workers. Most, if not all of these "outside" shops were nonunion and provided substandard working conditions for the employees. Moreover, the need for workers who normally would be members of the garment workers' union was diminished if not wholly eliminated. (Indeed, it appears that in 1979, Jou-Jou had only six inside employees, none of whom belonged to any union [*Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO,* 643 F2d 905, 907].) Finally, by "farming out" the work to an "outside shop", the manufacturer divested himself of contact with or responsibility for the

---

1. See description of the Jou-Jou operation in *Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO,* 490 F Supp 1376, 1378, affd 643 F2d 905.

worker, no longer being responsible for wages, working conditions, etc.[2]

In response to this new relationship and to extend the coverage of the collective bargaining agreement with the jobber to the employees of the contractors and to some extent, protect the interests of the "inside" employees of the jobber, the International Ladies' Garment Workers' Union (ILGWU) engaged in extensive picketing and negotiating to obtain what came to be known as a "Hazantown Agreement". Such an agreement, which takes its name from the "jobber" involved in *Danielson v Joint Bd. of Coat, Suit & Allied Garment Workers' Union, I.L.G.W.L.* (494 F2d 1230), executed between the jobber and the union, in many ways made the jobber responsible for the workers' benefits and working conditions in the contractor's "outside" shop, and committed the jobber to "farm out" its production only to contractors whose shops were approved by or represented by the union.

From May, 1978 to July, 1979, the employees of the subcontractors to whom Jou-Jou farmed out the actual manufacture of its garments were represented by Local 155 of the International Ladies' Garment Workers' Union (Local 155) pursuant to a "Hazantown Agreement" between Jou-Jou and Local 155. That agreement was not renewed upon its expiration and Local 155 picketed Jou-Jou for a time, but discontinued its picketing upon learning that Jou-Jou had entered into a "Hazantown Agreement" with Local 5A of the General Trades Employees Union (Local 5A), an affiliate of the United Brick and Clay Workers' Union of America, AFL-CIO. (Local 5A had received National Labor Relations Board [NLRB] certification as bargaining agent for the "outside" shops).

In March of 1980, believing that one of Jou-Jou's subcontractors (Tomlino) had been pressured by Jou-Jou and Local 5A into repudiating its contract with it and entering into labor relations with Local 5A and that the "Hazantown Agreement" with Local 5A was merely a sham designed to permit Jou-Jou to use "sweatshop" nonunion

---

**2.** For discussion of the "jobber-contractor" method of operation in the garment industry, see *Abeles v Friedman* (171 Misc 1042) and *Greenstein v National Skirt & Sportswear Assn.* (178 F Supp 681-688, app dsmd 274 F2d 430).

contractors and shield Jou-Jou from being compelled to agree to a bona fide Hazantown Agreement with a "real"[3] union, Local 23-25 began picketing Jou-Jou's premises on Seventh Avenue in Manhattan. Local 155 again demanded that its "Hazantown Agreement" be renewed and commenced picketing Jou-Jou again. Local 23-25 embraced the demands of 155 and continued picketing.

Jou-Jou commenced this action against Local 23-25 alleging that the picketing was violent and unlawful and was designed solely to damage the plaintiff's conduct of its business by interfering with its contract with Local 5A. Jou-Jou's complaint sought both monetary damages and injunctive relief. Jou-Jou simultaneously sought a temporary injunction against the alleged continued violent picketing.

Contending that the complaint and application for injunctive relief were primarily directed to the allegedly unlawful object of its picketing, and therefore that the suit properly belonged in Federal court, the union, prior to answering the complaint, noticed the case for removal to the Federal court for determination under the standards of pre-emptive Federal labor law. Jou-Jou opposed removal and sought remand to the State court, arguing that there was no "labor dispute" between the parties, rather, there was merely an effort by it to prevent tortious interference with the conduct of its business and obtain injunctive relief against violent picketing. At an expedited hearing, Judge MILTON POLLACK found that Jou-Jou had established, prima facie that there was violent picketing which was properly subject to State injunctive action and that the union had failed to establish that the action involved a "labor dispute" arising under Federal law. He therefore returned the matter to State court.

Special Term thereafter granted the temporary injunction, notwithstanding that Local 23-25 had neither answered the complaint nor offered any evidence in rebuttal to the charges of violent picketing. Special Term also did not hold a hearing to inquire into the applicability of

---

3. Local 23-25 contends that Local 5A is a racket union, located in New Jersey; has only 300 members and has no contracting shops that are under agreement to fulfill Jou-Jou's requirements.

section 807 of the Labor Law, but determined on the papers submitted that no "labor dispute" within the contemplation of section 807 was involved. On appeal, we, without opinion, affirmed Special Term's determination (see 76 AD2d 1044).

This State action thereafter lay dormant while the parties engaged in substantial litigation both before the NLRB and in the Federal courts. Jou-Jou brought action in the Southern District seeking a declaration that the efforts of Locals 23-25 and 155 to secure a "Hazantown Agreement", and the initiation by them of interunion arbitration against Local 5A violated Federal antitrust laws. They sought treble damages and injunctive relief against the arbitration proceeding.

In affirming the District Court's dismissal of Jou-Jou's complaint, the Court of Appeals for the Second Circuit confirmed that the dispute between Jou-Jou, Local 5A and Locals 155 and 23-25, involving, as it did, the picketing of a jobber and its outside contractors in order to obtain a "Hazantown Agreement", was a legitimate form of picketing that was not proscribed by subdivision (b) of section 8 of the National Labor Relations Act (US Code, tit 29, § 158; *Danielson v Joint Bd. of Coat, Suit & Allied Garment Workers' Union, I.L.G.W.U.*, 494 F2d 1230, *supra*). Nor, as the court held, could such picketing be attacked or the interunion arbitration be enjoined on antitrust grounds. (*Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO*, 643 F2d 905, *supra;* see, also, *Greater Clothing Contrs. Assn. v Locals 1-35, 10, 22, 48, 77, 89 & 189 ILGWU*, 81 Civ 3909 [SDNY].)

The Second Circuit summarily disposed of Jou-Jou's application for injunctive relief, holding that "the federal Courts * * * [do not] have jurisdiction to afford these plaintiffs injunctive relief. The Norris-LaGuardia Act was 'intended drastically to curtail the equity jurisdiction of federal courts in the field of labor disputes' * * * The Norris-LaGuardia Act denies the federal courts jurisdiction to issue an injunction against any lawful act 'involving or growing out of a labor dispute'. (29 U.S.C. § 107.) The term 'labor dispute' includes conflicts between employees, as in

this case, and not only conflicts between employers and employees" (643 F2d, at p 911).

Against the background of these developments between these litigants, and other developments that will be discussed *infra,* the defendant union moved Special Term in December, 1981, to dismiss the complaint herein, claiming failure to name the president or treasurer of Local 23-25 as a party defendant,[4] lack of subject matter jurisdiction and failure of the complaint to comply with the requirements of section 807 of the Labor Law. Defendants also sought vacatur of the preliminary injunction.

Special Term (WILLIAMS, J.), denied the motion to dismiss the complaint, finding in pertinent part, and without discussion, that "Defendant's second ground for dismissal was decided against [defendant] by the Hon. Milton Pollack, Judge, U. S. District Court, Southern District of New York. Defendant's final ground for dismissal has already been decided four times by the Appellate Division and as such is now the law of the case".

Judge CLIFFORD SCOTT, also at Special Term, rejected similar arguments presented by the union on its motion to vacate the temporary injunction, holding that under Federal law violence in picketing is cognizable under State law. He also observed that this court, on the prior appeal apparently was not persuaded by the union's argument that a section 807 of the Labor Law "labor dispute" existed, and thus he would not "now rule that the procedural and substantive limitations of that section applied."

Defendant union has appealed only from Judge WILLIAMS' order denying the motion to dismiss the complaint and not from Judge SCOTT's order denying the motion to vacate the preliminary injunction.

However, as a preliminary injunction is only a provisional remedy, there can be no doubt that the granting of the motion to dismiss the complaint would serve to dissolve the injunction at the same time. Moreover, even though no appeal was taken from Judge SCOTT's order, the applicability of the "procedural and substantive limitations" of sec-

---

4. This contention has not been pursued on appeal.

tion 807 of the Labor Law, are fully implicated in this case and therefore, will be discussed *infra*.

The principal issues to be resolved on this appeal are whether this complaint, containing but a single cause of action seeking both injunctive relief and monetary damages resulting from the alleged tortious interference with plaintiff's business relationship in its "Hazantown Agreement" with Local 5A through allegedly unlawful, violent picketing, involves a "labor dispute" pre-empted by Federal law, and if not, whether the complaint nevertheless must be dismissed for failure to comply with the provisions of section 807 of the Labor Law as involving a "labor dispute" cognizable under State law, because of the violent nature of the picketing alleged to have taken place.

Plaintiff's assertion that these issues have already been resolved is without merit. As to the contention that the issue of Federal pre-emption was decided by Judge POLLACK in the removal action, suffice it to say that argument was answered by the comments of the District Court in footnote 33 in *Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO* (490 F Supp 1376, 1388, *supra*).

Judge HAIGHT observed that the only issue before Judge POLLACK, was whether or not Local 23-25's picketing was violent or peaceful. After reading the transcript of the proceeding before Judge POLLACK, Judge HAIGHT stated (*supra,* p 1388, n 33) that "[w]hile at times he spoke in rather broad phrases, Judge Pollack focused exclusively upon whether [or not] Local 23-25's picketing was violent or peaceful. That was the only issue before him."

Plaintiff's further assertion that defendant's section 807 of the Labor Law contentions are precluded under the doctrine of law of the case by virtue of this court's prior affirmance of Judge SCOTT's grant of a preliminary injunction is likewise without merit. Initially, it should be observed that an appellate court is not necessarily bound by the doctrine of the law of the case. Moreover, in affirming the order granting the preliminary injunction, we did not reach the merits of the case and thus did not determine whether plaintiff was entitled to the relief prayed for. (See

*Walker Mem. Baptist Church v Saunders,* 285 NY 462, 474; *Gambar Enterprises v Kelly Servs.,* 69 AD2d 297; 28 NY Jur, Injunctions, § 168.)

Moreover, even if the law of the case doctrine were held applicable on appellate review, subsequent material changes, both in the legal implications of this case and further explications of the law of Federal pre-emption militate against the application of that doctrine here.

It is now clear beyond cavil that the picketing of Jou-Jou by the union in order to obtain a Hazantown agreement involves a "labor dispute", exempt from the strictures of section 8 (subd [b], pars [4], [7]) of the National Labor Relations Act (NLRA). (*Danielson v Joint Bd. of Coat, Suit & Allied Garment Workers' Union, I.L.G.W.U.,* 494 F2d 1230, revg 367 F Supp 486, *supra.*)

In *Danielson* (*supra,* p 1233), the Second Circuit although reversing the grant of a temporary injunction confirmed the conclusion reached by the District Court "that this kind of picketing [to secure a 'Hazantown Agreement'] in the garment industry comes within the policy exemptions provided by the Congress in Section 8 (e) [of the NLRA] as it is a logical concomitant to protect its own workers, as well as complying competitors in an industry so structured." Moreover, as pointed out earlier, the Circuit Court has expressly held that this dispute between Jou-Jou, Local 5A and Locals 155 and 23-25 is a "labor dispute", protected by the garment industry proviso of subdivision (e) of section 8 of the NLRA (*Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO, supra.*)

It is equally clear that resolution of such disputes is exclusively a matter of Federal jurisdiction, for such picketing is "arguably" unlawful under Federal labor law. In a recent decision involving facts remarkably similar to those at bar (indeed all that need be done to make the cases virtually identical is to change the name of the jobber from *Billy Jack For Her* to *Jou-Jou*) the United States District Court (SDNY) has held: — "There can be no doubt that federal labor law provides an arguable basis for finding the Union's alleged conduct unlawful. Section 8 (b) (4) (B) of the NLRA, 29 U.S.C. § 158(b) (4) (B) ('Section 8 (b) (4) (B)'),

prohibits 'secondary boycotts,' which occur where a labor organization having a dispute with an employer (the 'primary employer') forces or attempts to force another employer (the 'secondary employer') to discontinue its business dealings with the primary employer. Here, since the Union's dispute is with Billy Jack, the alleged picketing of Billy Jack's contractors potentially constitutes a secondary boycott and hence may fall within the prohibitions of Section 8 (b) (4) (B). Section 8 (b) (7) (A) of the NLRA, 29 U.S.C. § 158 (b) (7) (A) ('Section 8 (b) (7) (A)'), prohibits a labor organization from picketing an employer with the object of gaining recognition from the employer, where the employer has previously lawfully recognized a different labor organization. Here since Billy Jack has allegedly, lawfully recognized Local 5A, the picketing of Billy Jack's Broadway place of business may constitute unlawful picketing within the meaning of Section 8 (b) (7) (A)". (*Billy Jack For Her v New York Coat, Suit, Dress, Rainwear & Allied Workers' Union, ILGWU, AFL-CIO, Local 1-35, 10, 22, 48, 77, 89 & 189*, 511 F Supp 1180, 1190.)

Thus, since the picketing here is "arguably" prohibited by Federal labor law, it apparently would fall within the proscription against State jurisdiction over matters preempted by Federal law. As held by the Supreme Court in *San Diego Unions v Garmon* (359 US 236, 244): "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield." The court in *Billy Jack For Her* (*supra*), examined those Supreme Court teachings that are to be applied to a pre-emption analysis and concluded "that a finding of preemption is unavoidable here because of the close relationship between the controversy as it is presented under state law and as it would have been presented under federal law had Billy Jack filed a complaint with the NLRB. Both a state claim for tortious interference with contract and a federal claim under Sections 8 (b) (4) (B) and 8 (b) (7) (A) would challenge the *object* of the Unions' picketing activity." (*Billy Jack For Her v New York Coat, Suit, Dress, Rainwear & Allied*

*Workers' Union, ILGWU, AFL-CIO, Local 1-35, 10, 22, 48, 77, 89 & 189, supra,* p 1191.)

The court went on to say (pp 1191-1192) that: "Where conduct is arguably, but not necessarily, prohibited by federal labor law, preemption is required if application of state law might cause a different accommodation to be struck than that established by the federal statutory scheme. Plainly, there need be no concern that state law might be applied so as to disturb significantly the balance struck by Congress unless there is a substantial similarity between the two controversies as they would be respectively presented to the state court and the NLRB."

Thus to the extent that Jou-Jou seeks in this action to enjoin the defendant union from picketing to compel the execution of a "Hazantown Agreement", its objective, whether or not characterized as a claim for "tortious interference with contract", nonetheless, is the same as a Federal claim under section 8 (subd [b], par [4], cl [B]; subd [b], par [7], cl [A]) of the NLRA, which challenges the objective of the unions' picketing activity. Indeed, plaintiff's Federal lawsuit and the complaint filed with the NLRB subsequent to the institution of this action, make that abundantly clear. Since that activity is "arguably protected", Federal pre-emption ousts State court jurisdiction. While State court jurisdiction arguably would continue to exist to the extent that only money damages were sought to be recovered, as opposed to money damages and injunctive relief, entitlement to such damages would flow from the "tortious interference" with Jou-Jou's "Hazantown Agreement" with Local 5A. Thus, in that situation as well, "application of state law might cause a different accommodation to be struck than that established by the federal statutory scheme" (*Billy Jack for Her v New York Coat, Suit, Dress, Rainwear & Allied Workers' Union, ILGWU, AFL-CIO, Local 1-35, 10, 22, 48, 77, 89 & 189, supra,* p 1191), for the "obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." (*San Diego Unions v Garmon, supra,* p 247.)

Nor is this complaint shielded from dismissal by characterizing the action as one merely seeking to enjoin violent picketing and recover damages resulting therefrom. Vio-

lent picketing may, of course, be enjoined by a State court in a proper case. (*Automobile Workers v Russell*, 356 US 634; *Jou-Jou Designs v International Ladies Garment Workers Union, AFL-CIO, supra; Kay-Fries v Martino*, 73 AD2d 342, app dsmd 50 NY2d 1056, 51 NY2d 994.) However, where as here, a "labor dispute" is involved, a grant of such relief must be based upon compliance with the provisions of section 807 of the Labor Law, and a complaint seeking such relief must satisfy the pleading requirements of section 807 (Labor Law, § 807, subd 2). Such a complaint must allege with specificity the time, place and nature of the acts complained of and the names of the persons alleged to have committed the same or participated therein. The complaint must also set forth that the public officers charged with the duty to protect the property of the plaintiff have been duly notified and have either failed or been unable to furnish adequate protection (Labor Law, § 807, subd 1, par [e]). It must also appear that every reasonable effort has been made to settle the dispute (Labor Law, § 807, subd 4). Where the complaint is deficient in these respects, it must be dismissed (see *Rochdale Vill. v Beverly*, 96 Misc 2d 1080; see, also, *Mount Sinai Hosp. v Davis*, 18 Misc 2d 311, 314).

Jou-Jou's argument that a "labor dispute" addressed by section 807 is limited to issues involving terms and conditions of "employment" and thus that section 807 is inapplicable, is rejected. Indeed, the definition of "labor dispute" contained in section 807 (subd 10, par [c]) parallels the definition of "labor dispute" found in the Federal Norris-LaGuardia Act (US Code, tit 29, § 101 *et seq.*), as does the other language of section 807. (See *Kay-Fries v Martino*, 73 AD2d 342, 347, *supra.*) Nor does the fact that there has been violence in connection with the picketing here (see *Busch Jewelry Co. v United Retail Employees' Union, Local 830*, 281 NY 150) "preclude the existence of a 'labor dispute' as contemplated by section 807 of the Labor Law * * * [since] even extreme violence will not make inapplicable the provisions and requirements of what is now section 807 of the Labor Law". (*Robeson Appliances Div. of Vanwyck Int. v International Assn. of Machinists & Aerospace Workers, Dist. Lodge No. 182*, 89 Misc 2d 819, 821-822, citing

*May's Furs & Ready-to-Wear v Bauer,* 282 NY 331 and *Baillis v Fuchs,* 283 NY 133.)

Accordingly, we therefore conclude that the order of the Supreme Court, New York County (HENRY R. WILLIAMS, J.), entered on or about December 21, 1981, denying defendant's motion to dismiss the complaint should be reversed, on the law, with costs, the motion granted and the complaint dismissed.

KUPFERMAN, J. P. (dissenting in part). I cannot agree that "extreme violence" cannot be enjoined. (See *Billy Jack For Her v New York Coat, Suit, Dress, Rainwear & Allied Workers' Union,* 511 F Supp 1180, 1183, n 3.)

SANDLER, SULLIVAN and ROSS, JJ., concur with ALEXANDER, J.; KUPFERMAN, J. P., dissents in part in an opinion.

Order, Supreme Court, New York County, entered on or about December 21, 1981, reversed, on the law, the motion granted and the complaint dismissed. Appellant shall recover of respondent $75 costs and disbursements of this appeal.